MARSH, APPELLANT, *v.* GENERAL GRIEVANCE COMMITTEE OF THE LAKE ERIE AND WESTERN DISTRICT OF THE BROTHERHOOD OF LOCOMOTIVE FIREMEN AND ENGINEMEN, LIMA, OHIO, APPELLEE.

[Cite as Marsh v. General Grievance Committee, 1 Ohio St. 2d 165.]

(No. 38652—Decided March 17, 1965.)

166

*Mr. Quentin M. Derryberry*, for appellant.

*Messrs. Meredith, Meredith & Tait* and *Mr. Robert Tait*, for appellee.

HERBERT, J. Appellant's assignments of error are as follows:

"1. The judgment of the Court of Appeals was contrary to law and against the weight of the evidence.

"2. The court committed error in determining that the defendant-appellee committee had no standing in law to sue or to be sued, and therefore finding no cause of action existed against the defendant committee."

These assignments of error will be considered together.

The effect of Sections 1745.01 through 1745.04 of the Revised Code, if relevant, must be determined in arriving at a disposition of the cause.

It is alleged in the amended petition that the services were rendered and expenses incurred between the 11th day of October 1954 and the 24th day of June 1955. The sections of the Revised Code, *supra*, became effective on September 30, 1955. This action was commenced on July 24, 1957.

Query: Did appellant have a choice of remedies between the statutes above referred to and the common law?

The pertinent sections of the Revised Code read as follows:

1745.01. "Any unincorporated association may contract or sue in behalf of those who are members and, *in its own behalf*, be sued as an entity under the name by which it is commonly known and called." (Emphasis added.)

1745.02. "All assets, property, funds, and any right or interest, at law or in equity, of such unincorporated association shall be subject to judgment, execution and other process. A money judgment against such unincorporated association shall be enforced only against the association as an entity and shall not be enforceable against the property of an individual member of such association."

(1745.03 is not material.)

1745.04. "No cause of action by or against any such unincorporated association shall abate by reason of the death, removal, or resignation of any officer, or by the death or legal incapacity of any member, or by reason of any change in membership of the association during the pendency of the cause."

In *Lyons, Admx.,* v. *American Legion Post No. 650 Realty Co.,* 172 Ohio St. 331, these sections of the Revised Code are carefully analyzed and construed. The second and third paragraphs of the syllabus are as follows:

"2. Section 1745.01 *et seq.*, Revised Code, authorizes suit

against an unincorporated association as an entity and in the name by which it is commonly known, and, by the statutory provisions, when this is done any money judgment recovered must be satisfied out of the property of the association alone and not out of the property of the individual members thereof. A suitor may *at his election* pursue the statutory remedy provided or he may maintain his action against the individual members of such association.

''3. Where a statute gives a new remedy and does not in terms impair or deny a remedy already recognized by law, such statutory remedy is merely cumulative, and either the new or the old remedy may be employed at the option of the party seeking redress.'' (Emphasis added.)

Is the appellee committee severable from the Brotherhood of Locomotive Firemen and Enginemen to adjudicate such issues as are raised in the case at bar?

The brotherhood embraces firemen and enginemen employed on railroads throughout the United States and Canada, whereas the appellee is composed of three members chosen from three lodges comprising a district of the brotherhood. Neither the brotherhood nor the appellee is incorporated. Appellant is no longer a member of the brotherhood.

One of the members of the appellee committee, J. W. Jennings,—called to testify on behalf of the committee—testified as follows relative to the appellee committee:

''Well, I think first I should say that in the railroad industry, that a man hires out on the railroad, he hires out on a seniority district, that is the only place he holds rights. Ordinarily on any seniority district in this brotherhood, we maintain a lodge. The lodge has jurisdiction over that seniority district; each lodge has its own officers, *it is a separate entity of this brotherhood.* There is a local grievance committee composed of a local chairman, two other men—two other officers of the lodge. Matters coming before or arising upon that particular seniority district such as grievances, time claims—any matters to be handled with the carrier—are ordinarily handled by this local chairman. I don't want anyone to understand that all matters must be handled by a general chairman. The local chair-, man of each respective lodge in each respective seniority dis-

trict handles his own business up to the point where he is unsuccessful in handling those matters with the carrier. If that event should arise, he, in turn, submits the case to the general chairman or to the general grievance committee for their handling. * * *

"* * *

"A. Well, the general grievance committee on this railroad being composed of three men, is somewhat an oddity in the brotherhood. We have general grievance committees on certain larger carriers that are composed of 30, 40 local chairmen—have that many lodges in some of the larger railroads, but again I say that the local chairman conducts all his business of his own up to a point. Now, in the composition of these committees, our own brotherhood law provides that we will meet as a committee; we will elect a chairman, a vice chairman. On many of the bigger properties, we have more than one vice chairman. We have several. We have a secretary-treasurer of that committee. I think, as outlined in cross-examination here the other day, *the only way that you can pay the expenses of a general grievance committee on any property is by levying of assessments upon the members of that particular committee.* The committee itself has the right to determine how much it costs to operate this committee. If they deem it advisable to assess every member one dollar a month, this they do. If the expenses get to the point where it is deemed advisable to add to that one dollar, then this is done to pay all the expenses that might arise." (Emphasis added.)

The appellee committee appears to be an autonomous body elected by and responsible to three lodges, one at Lima, Ohio, one at Peru, Indiana, and the other at Frankfort, Indiana, comprising the district known as the Lake Erie and Western District of the Brotherhood of Locomotive Firemen and Enginemen. Each of the three lodges had one member on the committee. The committee deposited its funds in a bank of its own choosing and in the name of the committee, appellee here. It is authorized to adopt or amend its own bylaws.

The chairman and secretary-treasurer of the appellee committee determines the amount of assessments upon members of the three lodges, necessary to meet all expenses of the com-

mittee and levies and collects such assessments. A lodge failing to collect and forward this assessment "shall stand suspended."

The remuneration fixed for the services of appellant performed on behalf of the three lodges was $15 per day wages, $15 per day expenses and reimbursement for expense in going to and from localities in the performance of his duties.

Further comment upon additional powers and authority granted to the grievance committee, appellee here, would be only cumulative.

It is quite clear that the appellee is an entity within the brotherhood, with complete autonomy in matters and issues raised here. Appellee levies and collects assessments to pay the expenses of members of the committe in the performance of their duties. It selects the banks or bank for the deposit of its funds. Its duties and responsibilities are set out clearly in the constitution of the brotherhood. Grievance committees are known and respected as essential independent entities throughout the railroad industry. The appellee in the case at bar is composed of members chosen from the three lodges comprising the district. It has its own funds to pay its expenses and a method to replenish such funds from time to time as the occasion may require. These three lodges, together with the appellee committee, are an unincorporated association created and maintained for certain specified purposes, both fraternal and economic. The remedy provided in Section 1745.01 *et seq.*, Revised Code, is avilable to the appellant as a remedy in his cause. See *Lyons* v. *American Legion Realty, supra* (172 Ohio St. 331).

Appellee's position here as a party to this action may be analogous to the position of welfare fund trustees in industry. Under various names such funds are created by management and labor with the approval of the federal government. See *United Mine Workers of America* v. *Roncco* (1963), 314 F. 2d 186; *Association of Westinghouse Salaried Employees* v. *Westinghouse Electric Corp.*, 348 U. S. 437; *United Steel Workers of America* v. *Nev. Park Mining Co.*, 273 F. 2d 352. At page 187 in the *Roncco case*, the court says:

"The remaining item is the alleged failure to pay royal-

ties to the welfare fund. The trustees of this fund are *the proper parties to commence suits to enforce payment to the fund as the trial court held.* This point has been fully discussed in *Lewis* v. *Quality Coal Corp.,* 243 F. 2d 769 (7th Cir.), and *National Ladies Garment Workers Union* v. *Joy-Ann Co., Inc.,* 228 F. 2d 632 (5th Cir.). This question is also determined by the *Westinghouse case, supra.*"

The Bill of Rights, Section 16, Article I of the Constitution of the state of Ohio, is in this language:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

This cause was carefully tried in the Court of Common Pleas. Several hundred pages of oral testimony were presented, stipulations were entered into and numerous documentary exhibits were admitted in evidence. The court instructed the jury upon the issues and there does not appear to be any substantial complaint about this charge of the court. The jury returned its verdict.

We find no error prejudicial to the appellee. The judgment of the Court of Appeals is reversed.

*Judgment reversed.*

ZIMMERMAN, O'NEILL, SCHNEIDER and BROWN, JJ., concur.

TAFT, C. J., dissents from paragraph two of the syllabus and from the judgment.

MATTHIAS, J., dissents.