# BROWN, *Appellant,*

*v.*

# TRANSCON LINES et al, *Respondents.*

## (TC A 7611-16415, SC 25513)

588 P2d 1087

Allen Reel, of Kennedy, King & McClurg, Portland, argued the cause and filed the briefs for appellant.

Richard H. Harding, of Littler, Mendelson, Fastiff & Tichy, P.C., San Francisco, California, argued the cause for respondents. With him on the brief were Arlene N. Heath, of Littler, Mendelson, Fastiff & Tichy, P.C., San Francisco, California, and Leon Simson, of Rives, Bonyhadi, Drummond & Smith, Portland.

TONGUE, J.

**TONGUE, J.**

Plaintiff brought this action against his former employer and supervisor seeking compensatory and punitive damages for an alleged retaliatory discharge for filing a claim for workers' compensation. The trial court granted defendants' motion for judgment on the pleadings, or, in the alternative, for summary judgment, holding that "primary jurisdiction over plaintiff's complaint is vested in the Bureau of Labor by virtue of ORS ch 659." Plaintiff appeals.

*Plaintiff's complaint and defendants' motion.*

Plaintiff's complaint alleged that he had been employed by defendant Transcon Lines; that on May 29, 1975 he was injured in the performance of his duties, requiring medical care and treatment; that he applied for and received workers' compensation benefits under applicable Oregon statutes; that on July 1, 1975 his employment was terminated; that

> "The termination of plaintiff was a wrongful act, motivated by plaintiff's pursuit of his workmen's compensation claim, and was contrary to plaintiff's right to seek compensation as provided by law without fear of reprisal, discrimination or retaliation."

and that, as a result, he suffered general damages and was also entitled to punitive damages.

Defendants filed a "motion for judgment on the pleadings and/or for summary judgment" on the grounds that plaintiff's complaint failed to state a cause of action and that the court was without subject matter jurisdiction because

> "* * * [U]nder ORS 659.400 to 659.435, primary jurisdiction for resolution of an alleged unlawful employment practice based on the termination of an employee for the filing of a workmen's compensation claim is vested exclusively in the Oregon Bureau of Labor."

[ 599 ]

ORS 659.410 makes it an unlawful employment practice to discriminate against an employee for making a claim for workers' compensation. ORS 659.435 provides that such an employee may file a complaint with the Bureau of Labor. From an affidavit filed by plaintiff in opposition to defendants' motion it appears that plaintiff did not file such a complaint.

*The issue to be decided and the contentions of the parties.*

The issue to be decided in this case is whether an employee who alleges that he was discharged on or about July 1, 1975 for filing a claim for workers' compensation and who did not file a complaint with the Bureau of Labor was entitled to maintain an action at law for compensatory and punitive damages.

Plaintiff contends that an employee who was discharged in July 1975 for the filing of a claim for workers' compensation had a cause of action for damages under "principles of common law," citing *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), and *Frampton v. Central Indiana Gas Co.,* 260 Ind 249, 297 NE2d 425, 63 ALR3d 973 (1973). Plaintiff also cites decisions in which federal courts have found an "implied cause of action" under what plaintiff says are statutes "similar" to ORS 659.410. In addition, plaintiff contends, among other things, that his right to maintain such an action was "not affected by the administrative remedies of ORS ch 659 prior to mendment in 1977"; that such remedies "were limited in scope and inadequate in effect," and that "there is nothing in Chapter 659 that indicates, either expressly or impliedly, that these administrative procedures are exclusive or that the remedies must be exhausted before an employee can maintain an action for damages."

Defendants' responding contentions may be summarized as follows: (1) that plaintiff has no "private" cause of action for wrongful termination for the filing of a claim for workers' compensation; (2) that the

plaintiff, "having based his claim on an alleged violation of ORS 659.410" is "claiming to be aggrieved by an alleged unlawful employment practice" under the terms of ORS ch 659 and, "therefore, must initiate and exhaust his administrative remedies before he is entitled to file a complaint in the Oregon Circuit Court"; (3) that ORS 659.410 "is part of a larger administrative scheme enacted by the Oregon Legislative Assembly to deal exclusively with offenses delineated as 'unlawful employment practices,' "; (4) that at the time of plaintiff's discharge in 1975 ORS ch 659 provided an adequate remedy; and that the use of the word "may" in ORS 659.040(1) and ORS 659.050(1) did "not in any way undercut the principle that administrative remedies must be exhausted"; (5) that the 1977 amendments to ch 659 do not support plaintiff's position in that they "do not provide an exclusive remedy to a person, such as plaintiff, who alleges discrimination for filing a workmens' compensation claim" and do not provide for an award of either general or punitive damages in such cases; (6) that defendants' position is directly supported by the decision of the Oregon Court of Appeals in *Phillips v. Dept. of Rev.,* 23 Or App 748, 544 P2d 196 (1975), and by the decision of this court in *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977); (7) that most of the cases relied upon by plaintiff, including *Nees v. Hocks, supra,* and *Frampton v. Central Indiana Gas Co., supra,* are not in point because no administrative remedies were available to the plaintiffs in those cases, and (8) that, for these reasons, the trial court properly ruled that plaintiff's failure to initiate and exhaust his administrative remedies deprived that court of jurisdiction.[1]

---

[1]The parties use the terms "primary jurisdiction," "primary and exclusive jurisdiction," and "exhaustion of remedies" without undertaking to define them. *See* 3 Davis, Administrative Law Treatise 1-2, 57, §§ 1901 and 20.01 (1958), and Schwartz, Administrative Law 481-84, §§ 165-66 (1976). The thrust of the contentions by the defendants in this case, however, appears to be that the sole remedy available to the plaintiff

*The nature and basis for plaintiff's cause of action.*

In resolving these conflicting contentions it is first necessary to consider the nature and basis of plaintiff's alleged cause of action. If such a cause of action must rest upon the provisions of ORS 659.410, which makes it an "unlawful employment practice" to "discriminate" against an employee who has filed a claim for workers' compensation benefits, it may be that any such cause of action for damages in a court of law must be implied from that statutory provision and that plaintiff's sole redress is to file a complaint with the Commissioner of the Bureau of Labor and pursue the administrative remedies provided by ORS ch 659, at least unless such administrative remedies are demonstrably inadequate.

On the other hand, if, as contended by plaintiff, his cause of action need not be based upon or implied from ORS 659.410, but instead plaintiff had a cause of action for damages for wrongful discharge based upon previously existing principles of common law, then the primary focus of the problem is not so much whether "adequate" administrative remedies were provided by ORS ch 659 at the time of plaintiff's discharge, but whether by the enactment of that statute the Oregon legislature abolished a previously existing common law cause of action.

In determining whether such a common law cause of action existed prior to the time the legislature enacted ORS 659.410, the following chronology should be noted. Plaintiff alleges that he was wrongfully discharged on or about July 1, 1975. On June 12, 1975, this court in *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), after a discussion of common law principles

───────────

━━━━━━━━━━

between 1973 and 1977 was to file a complaint with the Commissioner of the Bureau of Labor and pursue the administrative remedies provided under ORS ch 659.

applicable to cases involving wrongful discharges of employees by their employers, held (at 218) that:

> "We conclude that there can be circumstances in which an employer discharges an employee for such a socially undesirable motive that the employer must respond in damages for any injury done. * * *"[2]

Upon the application of that rule to the facts in *Nees,* we held that an employee who was discharged on March 1, 1973 because she went on jury duty contrary to the wishes of her employer had at that time a common law cause of action for damages. There was no statute applicable to such a case, however, much less any applicable administrative remedy under any such statute.

On October 5, 1973, approximately seven months after that March 1, 1973 date, the statute involved in this case, ORS 659.410, as enacted by the 1973 session of the Oregon legislature, became effective. (*See* Or Laws 1973, ch 660.) That statute declared it to be an "unlawful employment practice" for an employer to discharge an employee for the filing of a claim for workers' compensation. It follows, in our view, that if the discharge of an employee for making a claim for workers' compensation is a discharge for such a "socially undesirable motive" as to fall within the rule of *Nees,* then a common law cause of action for such a discharge existed prior to the enactment of ORS 659.410.

■ We are of the opinion that the discharge of an employee by his employer for the filing of a claim for workers' compensation is a discharge for such a "socially undesirable motive" as to come within the rule as stated in *Nees.* We agree with the holding by the Supreme Court of Indiana in *Frampton v. Central*

---

[2] *See also* Note, *A Common Law Action for the Abusively Discharged Employee,* 26 Hast LJ 1535 (1975).

*Indiana Gas Co.,* 260 Ind 249, 297 NE2d 425, 428, 63 ALR3d 973 (1973), in which that court said:

> "Retaliatory discharge for filing a workmen's compensation claim is a wrongful, unconscionable act and should be actionable in a court of law. * * *"[3]

In addition, by the enactment of ORS 659.410 the Oregon legislature has declared, in effect, that the discharge of an employee for the filing of a claim for workers' compensation is a discharge of an employee for a "socially undesirable motive." We do not mean to say that, as a result, plaintiff's cause of action must be based upon or implied from ORS 659.410. Instead, we refer to that statutory provision, in our analysis of this case, as a recognition by the Oregon legislature of a public policy which provides a proper basis for application of the rule as stated in *Nees* to the discharge of an employee for making a claim for workers' compensation.[4]

For these reasons, we hold that a common law cause of action for wrongful discharge for the filing of a claim for workers' compensation existed at the time of plaintiff's discharge on July 1, 1975, unless that cause of action had been abolished by the Oregon legislature by the enactment in 1973 of ORS 659.410 et seq. In deciding that question we must next consider the legislative history of the Oregon statutes relating to

---

[3] For other cases holding that an employee discharged for filing a claim for workers' compensation has a cause of action, *see Sventko v. Kroger Co.,* 69 Mich App 644, 245 NW2d 151 (1976), and *Leach v. Lauhoff Grain Co.,* 51 Ill App 3d 1022, 366 NE2d 1145 (1977). *But see Christy v. Petrus,* 365 Mo 1187, 295 SW2d 122 (1956), *Dockery v. Lampert Table Co.,* 36 NC App 293, 244 SE2d 272 (1978); *Kelsay v. Motorola, Inc.,* 51 Ill App 3d 1016, 366 NE2d 1141 (1977), and *Loucks v. Star City Glass Co.,* 551 F2d 745 (7th Cir 1977). *See also* Annot., 63 ALR3d 979 (1975), and Gamm, *The Implied Rights Doctrine,* 41 UMKC L Rev 292 (1972).

[4] *Cf.* Blumrosen, *The Right to Seek Workmen's Compensation,* 15 Rutgers L Rev 491, 496-98, 500-01 (1961); Stone, *The Common Law in the United States,* 50 Harv L Rev 4, 13-14 (1936); *Geary v. United States Steel Corp.,* 456 Pa 171, 319 A2d 174, 180 (1974); *Harless v. First Nat. Bank in Fairmont,* —— W Va ——, 246 SE2d 270, 275-76 (1978), and *Wehr v. Burroughs Corp.,* 438 F Supp 1052, 1054-56 (ED Pa 1977).

the enforcement of civil rights and to unlawful employment practices.

*Legislative history of Oregon statutes relating to the enforcement of civil rights and to unlawful employment practices.*

1. *Prior to 1973.*

In 1949 the Oregon legislature first enacted a statute "relating to and providing for the elimination of certain practices of discrimination because of race, color, religion or national origin." (Or Laws 1949, ch 221; now ORS ch 659.) That statute provided that any person claiming to be aggrieved by an act of discrimination designated as an "unlawful employment practice" may file a complaint with the Commissioner of the Bureau of Labor (§ 6; ORS 659.040) and that "after the filing of any complaint the Commissioner *shall* cause prompt investigation to be made" (§ 7; ORS 659.050). That statute also provided that if the Commissioner found that the complaint was supported by "any substantial evidence" and was then unable to "eliminate the unlawful practice complained of" by negotiation, he "shall" cause written notice to be served on the employer and hold a hearing (§ 7; ORS 659.050 and 659.060). If he found that the employer had engaged in an "unlawful employment practice," he was to issue a cease and desist order, and if no discrimination was found, he was to issue an order dismissing the complaint (§ 7; ORS 659.060). The statute also provided that any such order was appealable by "any party aggrieved" to the circuit court, and was also enforceable by mandamus or injunction (§§ 8 and 9; ORS 659.070 and ORS 659.080). No reference was made in that statute, however, to discrimination in employment against employees for filing claims for workers' compensation.

Some of these sections in ORS ch 659 were amended in 1957 and 1961, but not in any manner of significance to the issues of this case. (*See* Or Laws 1957, ch 724, §§ 6, 7 and 8; Or Laws 1961, ch 145, §§ 1 and 2.)

The statute was further amended in 1963 in an attempt to provide more "workable remedies," to clarify and codify "the hodge-podge of existing sections on Civil Rights" (including those relating to the functions of the Commissioner), and to give "formal legal status" to the "conciliation agreement." (*See* explanation of House Bill 1394 by Norman O. Nilsen, Labor Commissioner.) The procedures of the 1949 statute referred to above, including the requirement that the Commissioner "shall" investigate all complaints of discrimination, were not substantially changed insofar as they relate to the problems presented by this case. *See* Or Laws 1963, ch 622, §§ 6, 7, 10 and 11, and ORS 659.050 and ORS 659-060.)

The 1963 bill also included a provision to the effect that one of its purposes was to provide "an adequate remedy for persons aggrieved by certain acts of discrimination because of race, religion, color or national origin or unreasonable acts of discrimination in employment based upon age" and to provide "an adequate administrative machinery" for the resolution of complaints of such discrimination. (*See* Or Laws 1963, ch 622, § 2, and ORS 659.022(2) and (3).) Again, however, we note that at that time ORS ch 659 included no provision relating to the discharge of an employee for filing a claim for workers' compensation.

In 1971 the legislature amended ORS 659.050 to provide that upon the filing of a complaint of an alleged unlawful employment practice the Commissioner of the Bureau of Labor "*may*," instead of "shall," cause an investigation to be made of such a complaint and that if such an investigation discloses any substantial evidence supporting the complaint he "*may*," instead of "shall," take steps to effect a settlement of the complaint and eliminate the effects of the unlawful practice (Or Laws 1971, ch 723, § 2; ORS 659.050). No direct explanation for that change appears in the legislative history of the bill other than the statements that "the bill came from the Civil

[ 606 ]

Rights Task Force and changes some of the procedures to make the program more workable" (Hearings on HB 3056, House Judiciary Committee, May 19, 1971, p 1) and that the bill "make(s) investigation procedures of [the] civil rights division more effective" (Hearings on HB 3056, Senate State & Federal Affairs Committee, May 28, 1971, p 4).

2. *The 1973 Act relating to handicapped persons.*

In 1973 the Oregon legislature enacted HB 3057 "relating to handicapped persons" and amending ORS ch 659. According to a statement submitted by the sponsor of HB 3057, that bill was intended to extend to handicapped persons "similar guarantees against discrimination" as already provided under ch 659 "against discrimination on account of race, color, religion, national origin, or sex" (statement of Norm Silver, Administrator of Vocational Rehabilitation Division, Hearings on HB 3057, Senate State & Federal Affairs Committee, Exhibit file, p 2). Section 4 of that bill provided, and for the first time, that:

> "It is an unlawful employment practice for an employer to discriminate against a workman with respect to hire or tenure or any term or condition of employment because the workman has applied for benefits or invoked or utilized the procedures provided for in ORS 656.001 to 656.794 [the Workers' Compensation Law] * * *." Or Laws 1973, ch 660, § 4; ORS 659.410.

It was also provided (in § 9, ORS 659.435) that a person aggrieved by an unlawful employment practice (such as a discharge for filing a claim for workers' compensation, in violation of ORS 659.410) "may" file a complaint with the Commissioner of the Bureau of Labor under ORS 659.040 and that the Commissioner "may" then proceed under ORS 659.050 et seq. Under ORS 659.050 it was provided that the Commissioner "may" investigate such a complaint and, upon discovering substantial evidence to support it he "may" cause further steps to be taken, including conference and conciliation (ORS 659.050); that if such efforts failed he "shall" cause a hearing to be held and issue

findings of fact, conclusions of law, and either a cease and desist order or an order dismissing the complaint (ORS 659.060), and that such an order was enforceable by mandamus or injunction and appealable under the Administrative Procedures Act (ORS 659.070, 659.085).

Such was the state of the statutory law in Oregon when the plaintiff in this case was terminated on or about July 1, 1975, allegedly for the filing of a claim for workers' compensation.[5]

### 3. *The 1977 statute.*

We recognize that it may not be proper to refer to statutory provisions enacted in 1977 for the purpose of determining whether the legislature previously intended provisions enacted by it in 1973 to abolish any cause of action at common law that plaintiff might otherwise have been entitled to pursue. Reference was made by the parties, however, to the 1977 amendments and their legislative history has relevance to the collateral question whether the statutory remedies existing at the time of plaintiff's discharge in 1975 were adequate remedies.

House Bill 2223, as originally introduced, would have provided as follows:

> "Any person claiming to be aggrieved by an unlawful employment practice as defined in subsection (13) of ORS 659.010 or an unlawful practice as defined in subsection (14) of ORS 659.010 shall have a cause of suit to recover compensatory damages, punitive damages and such further relief as will eliminate the effects of any unlawful practice found. The suit shall be commenced within one year of the alleged unlawful practice. Any person recovering damages or relief under this section shall be entitled to reasonable attorney fees as determined by the court in addition to costs and necessary disbursements."

---

[5]Some of these sections in ORS ch 659 were amended in 1975, but not in any manner of significance to the issues of this case. *See* Or Laws 1975, chs 419 and 503.

At hearings before the House Labor Committee on HB 2223 there was testimony that "Under Oregon laws, this administrative process [the filing of a complaint with the Commissioner of the Bureau of Labor] is the sole avenue of recourse for a complaint of this nature"; that persons filing such complaints had been "waiting two to four years for hearings with the Bureau of Labor," and that "persons who file these complaints should have the option of pursuing their charges in court if they so desire." (Hearings on HB 2223, House Labor Committee, June 21, 1977, p 6, and Feb. 4, 1977, Ex B, pp 1-2.)

At hearings before the Senate Judiciary Committee on HB 2223 there was testimony by an advocate of that bill that it was "a bill to create the private right of action" and that it "gives the aggrieved party the right to pursue his or her complaint in court rather than having to go through the labor commission." (Hearings on HB 2223, June 8, 1977, pp 14-15.)

As finally enacted substantial changes were made in HB 2223. Thus, it was provided that a person complaining of an unlawful employment practice (including discharge for making a claim for workers' compensation) may file a civil suit for injunctive relief and "such other equitable relief as may be appropriate, including but not limited to reinstatement * * * with or without back pay," plus costs and reasonable attorney fees. (Or Laws 1977, ch 453, § 6; ORS 659.121(1).) A person complaining of a discriminatory practice in real estate transactions or in public accommodations may file a civil action for compensatory damages or $200, whichever is greater, and for punitive damages not to exceed $2,500, plus costs and reasonable attorney fees. (§ 6(2); ORS 659.121(2).) It was also provided that the filing of a complaint with the Commissioner shall not be a condition precedent to the filing of such a suit or action and that the filing of such a suit or action shall constitute both an election of remedies and a waiver of the right to file a complaint with the

[ 609 ]

Commissioner. (§§6(3) and (4); ORS 659.121(3) and (4).) Finally, it was provided that the provisions of the Act "shall apply only to those alleged acts of discrimination occurring on or after the effective date of this Act [October 4, 1977]." (Or Laws 1977, ch 453, § 7.)

*In 1975 plaintiff had a cause of action at common law for his allegedly unlawful discharge and that cause of action was not abolished by the statutory provisions enacted in 1973.*

As previously noted, it is our opinion that as of the date of plaintiff's discharge on or about July 1, 1975, he had a common law cause of action for wrongful discharge for filing a claim for workers' compensation (under the rule as previously stated in *Nees v. Hocks, supra,* and as applied by this court in that case to a discharge in March 1973) unless that cause of action had been abolished by the Oregon legislature by the adoption of ORS 649.410 et seq. effective as of October 5, 1973.

■ As a general rule, if a statute which provides for a new remedy shows no intention to negate, either expressly or by necessary implication, a pre-existing common law remedy, the new remedy will be regarded as merely cumulative, rather than exclusive, with the result that a plaintiff may resort to either the pre-existing remedy or the new remedy.[6] This rule is

---

[6] *See Federal Marine Terminals v. Burnside Shipping Co.,* 394 US 404, 412 (1969); *Pompey v. General Motors Corp.,* 385 Mich 537, 189 NW2d 243, 251 (1971); *Tucson Gas & Electric Co. v. Schantz,* 5 Ariz App 511, 428 P2d 686, 690 (1967); *Marsh v. General Grievence Committee, Etc.,* 1 Ohio St 2d 165, 205 NE2d 571, 573 (1965); *Schuster v. City of New York,* 5 NY2d 75, 154 NE2d 534, 540 (1958); *Everett v. County of Clinton,* 282 SW2d 30, 34 (Mo 1955); *State v. Jewell,* 250 Wis 165, 28 NW2d 314, 315 (1947); *Ortega v. Salt Lake Wet Wash Laundry,* 108 Utah 1, 156 P2d 885, 894-95 (1945); *Decker v. Domoney,* 387 Ill 524, 56 NE2d 750, 752-53 (1944); *City of Charlottesville v. Marks' Shows,* 179 Va 321, 18 SE2d 890, 895-96 (1942); *Branson v. Branson,* 190 Okla 347, 123 P2d 643, 648 (1942); *Rosenfield v. Matthews,* 201 Minn 113, 275 NW 698, 700 (1937); *Urbach v. Urbach,* 52 Wyo 207, 73 P2d 953, 961 (1937); *State v. Barney,* 133 Neb 676, 276 NW 676, 683 (1937); *Rennie v. Washington Trust Co.,* 140 Wash 472, 249 P 992, 994 (1926); *Mulroy v. Sioux Falls Trust & Savings Bank,* 165 Minn 295, 206 NW 461, 463 (1925); *Collard v. Hohnstein,* 64 Colo 478, 174 P 596, 597 (1918); and *King v. Viscoloid Co.,* 219 Mass 420, 106 NE 988, 989 (1914).

particularly applicable when the new statutory remedy is not an adequate one.[7] Prior decisions of this court are consistent with this general rule.[8]

Upon application of this rule to this case it may well be that we would conclude that the provisions of ORS ch 659, as they now exist subsequent to the amendments enacted by the Oregon legislature in 1977 (and under which an employee discharged for making a claim for workers' compensation can elect to file either a complaint with the Commissioner of the Bureau of Labor or a civil suit for injunctive and "such other equitable relief as may be appropriate"), not only provide adequate remedies to an employee such as plaintiff, but, by necessary implication, show a legislative intent to abrogate or supersede any previously existing common law remedy for damages, even though the legislature might not then have been aware of the existence of such a remedy. We need not, however, decide that question in this case.

■ On the other hand we conclude, upon the application of this same rule, that the remedies provided by statute as of July 1, 1975, when plaintiff was discharged, were not exclusive. We cannot find in the legislative history or in the terms of ORS 659.410 et seq. either an express or implied intent by the Oregon legislature in the adoption of such provisions to abrogate or supersede any previously existing common law remedy then available to an employee who was

---

[7] *See Lindner v. District of Columbia,* 32 A2d 540, 542-44 (DC 1943); *Cann v. George B. Williams Land & Livestock Co.,* 56 Nev 242, 48 P2d 887, 890-91 (1935); *Tucker v. Missoula Light & Water Co.,* 77 Mont 91, 250 P 11, 14 (1926); *Keith v. Tilford,* 12 Neb 271, 11 NW 315, 316 (1882).

*Cf., Shriver v. Woodbine Savings Bank,* 285 US 467, 477-79 (1932); *Hickman v. City of Kansas,* 120 Mo 110, 25 SW 225, 226-27 (1894).

[8] *See Gilbertson v. McLean et al.,* 216 Or 629, 635-41, 341 P2d 139 (1959). *Cf. Farris v. U.S. Fidelity & Guaranty Co.,* 284 Or 453, — P2d — (1978); *Roshak v. Leathers,* 277 Or 207, 215, 560 P2d 275 (1977); *Wood et al v. Honeyman et al,* 178 Or 484, 535, 169 P2d 131 (1946); *Cordrey v. Steamship "Bee,"* 102 Or 636, 656, 201 P 202 (1922); *Aiken v. Aiken,* 12 Or 203, 207, 6 P 682 (1885).

discharged for making a claim for workers' compensation.

In addition, it appears that the remedies available under ORS ch 659 at the time of plaintiff's discharge were inadequate. As previously noted, under the statutory provisions as they existed on July 1, 1975, the Commissioner was no longer required to investigate a complaint by an employee alleging that he had been discharged for making a claim for workmens' compensation,[9] and there was no provision for an order from which a complainant could appeal if the Commissioner chose to exercise his discretion and decline to investigate (*See* ORS 659.050(1), 659.060(1), (2) and (3), 659.070 and 659.085). It also appears that the Oregon legislature in 1977, perhaps because of evidence submitted to it that so many complaints of "unlawful employment practices" had been filed that there had been a waiting period of two or more years for the processing of such complaints, may have concluded that the pre-existing administrative procedures provided an inadequate remedy and, for that reason, provided the alternative remedy of a civil suit.

For all of these reasons, we hold that upon plaintiff's discharge in 1975 he was entitled to file an action at law to enforce a previously existing common law remedy for wrongful discharge under the rule as previously stated by this court in *Nees v. Hocks, supra;* that such a cause of action was not abolished by the legislature by the enactment of ORS 659.410 et seq. in 1973, and that, as a result, the trial court erred in allowing defendants' motion for judgment on the pleadings and/or for summary judgment.

---

[9] As stated in *Stewart v. Travelers Corporation,* 503 F2d 108, 113 (9th Cir 1974), in discussing whether a somewhat similar administrative remedy provided an adequate remedy for a discharge alleged to have been wrongful:

"* * * Enforcement by the Department of Labor is * * * problematic because any action by the Secretary is discretionary, not mandatory."

We do not believe that our decision in this case is necessarily inconsistent with our decision in *Walsh v. Consolidated Freightways, supra*. Not only was the alleged reason for the discharge of the plaintiff in that case different from the alleged reason for the discharge of this plaintiff, but this court concluded in *Walsh* (at 352) that existing remedies then available to him under federal statutes (under which he had, in fact, also filed a complaint) were "adequate to protect both the interests of society * * * and the interests of employees" in such cases, within the meaning of the rule as previously stated in *Nees v. Hocks, supra*.

In addition, we do not believe that this result is contrary to the decision of the Court of Appeals in *Phillips v. Dept. of Rev., supra,* relied on by defendants as a case "on all fours" with this case. The plaintiff in that case had made a request to the Public Employe Relations Board (PERB) that it reclassify her as a Revenue Agent 2, contending that she was doing the duties of that position and that she had been denied promotion because of her sex. At about the same time she had filed sex discrimination charges with the Bureau of Labor under ORS 659.040. The Court of Appeals held, in that context, that PERB had no jurisdiction to hear the sex discrimination charge because the legislature had established a specific procedure by which the Bureau of Labor would hear such charges and "intended that it perform that function exclusively." That case did not involve the question whether any pre-existing common law cause of action was abrogated or superseded by the enactment of ORS ch 659, as in this case.

■ As in *Nees v. Hocks, supra,* however, we believe that it would be improper to permit plaintiff to seek an award of punitive damages in this case. As held in *Nees* (at 220), to sanction such an award for a newly recognized common law cause of action would be to permit the jury to punish defendants for conduct which they could not have determined beforehand to

[ 613 ]

be actionable. Although a cause of action for the discharge of an employee for a "socially undesirable motive" was recognized in *Nees,* that case was not decided by this court until June 12, 1975. We do not believe that defendants in this case could reasonably be expected to have known of that decision and to have understood its application to the facts of this case at the time of plaintiff's discharge on July 1, 1975. There may also be additional reasons why punitive damages should be denied in such an action, but which we need not consider in this case.

For all of these reasons, the judgment of the trial court is reversed and the case is remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.