On remand from the Oregon Supreme Court March 27, reversed and
remanded July 11, reconsideration denied August 24,
petition for review denied October 2, 1984 (298 Or 37)

# McQUARY,
*Appellant,*

*v.*

# BEL AIR CONVALESCENT HOME,
INC., dba Bel Air Care Center,
*Respondent.*

(A8010-05914; CA A24637)

684 P2d 21

Michael A. Greene, Portland, appeared for appellant. With
him was Rosenthal & Greene, Portland.

Lee M. Hess, Portland, appeared for respondent. With him was Swire, Riebe & Hess, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Plaintiff brought this action for wrongful discharge, alleging that she had been fired from her position with defendant because she had threatened to report an instance of staff abuse of one of defendant's patients. A jury found for defendant; plaintiff appeals.[1] The case presents two issues: (1) Does the common law tort of wrongful discharge apply to an employe who is fired for threatening to report alleged nursing care home patient mistreatment to an appropriate state agency;[2] and (2), if it does, must the plaintiff prove that there has been, in fact, "patient abuse"[3] at defendant's nursing care facility in order for her discharge for threatening to report that abuse to be wrongful? We hold that the facts of this case would allow a jury to find that plaintiff was wrongfully discharged and that she needed to prove only that she had a good faith belief that patient abuse had occurred. We therefore reverse and remand.

Defendant is a licensed intermediate care nursing home. Plaintiff was employed as defendant's In-Service Director of Nurses Training and Education. In December, 1979, plaintiff's aunt became a patient at the care center. In the same month, Samuel Lissitz became the home's administrator. Early in the morning of January 26, 1980, a fire broke out in a wastebasket in a corridor near the room plaintiff's aunt occupied. Lissitz concluded that plaintiff's aunt had started the fire by careless smoking and ordered her transferred from the home. Plaintiff was off duty but came to the home when she learned of the transfer. Due to her intercession, her aunt was returned to the home; after a heated

---

[1] We previously dismissed the appeal for failure to serve the proper parties within the required period. *McQuary v. Bel Air Convalescent Home, Inc.,* 64 Or App 528, 669 P2d 348 (1983). The Supreme Court reversed and remanded the case to us. 296 Or 653, 678 P2d 1222 (1984); *see Johnson v. Employment Division,* 67 Or App 710, 714-15, 680 P2d 386 (1984) (Gillette, P. J., concurring).

[2] Although plaintiff's only assignment of error is the court's instruction that the jury had to find that there was, in fact, patient abuse in order to give a verdict for plaintiff, both parties argue at length whether plaintiff has stated a wrongful discharge claim. Because we would necessarily affirm the judgment, without reaching the jury instruction issue, if plaintiff has not stated such a claim, we must consider the latter question as well.

[3] While "patient abuse" has a statutory definition, ORS 441.630(1), the term was used at trial—and is used in this opinion—in its broader, nonstatutory sense.

conversation with Lissitz, plaintiff agreed to stay at the home that evening until her aunt went to sleep.

The next day, January 27, the facility's fire sprinkler system broke down because of frozen pipes, and the fire department ordered a 24 hour fire watch until it was operable. Plaintiff was again off duty. Plaintiff's aunt called her at her home to complain that Lissitz was yelling at the aunt and calling her a fire bug. Plaintiff came to the care center. After another heated conversation, in the course of which plaintiff threatened to report his actions toward her aunt to the Health Division, Lissitz fired her. His action is the basis for her claim.

The first issue is whether a discharge for such a threat is actionable. An employer may not discharge an employe for fulfilling a societal obligation, *Delaney v. Taco Time Int'l.*, 297 Or 10, 681 P2d 114 (1984); *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1975), or if the employer acts with a socially undesirable motive. *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978). The evidence in this case would permit a jury to find that Lissitz discharged plaintiff because she had threatened to report his actions to the Health Division and that she believed in good faith that his actions violated her aunt's rights under the Nursing Home Patient's Bill of Rights. ORS 441.605.[4] The Health Division is charged with protecting patients' rights under the act, ORS 441.615, and a report to it would be a societal obligation of a person who knows of violations. The legislature's desire to protect patients, which reflects a comparable concern on the part of the federal government, 42 CFR § 405.112(1)(k); 42 CFR § 442.311, shows that that protection is an important public policy analogous to the performance of jury duty or the avoidance of defamation, policies which the Supreme Court has found to justify wrongful discharge claims. *Delaney v. Taco Time Int'l, supra; Nees v. Hocks, supra; see Holien v. Sears, Roebuck & Co.*, 66 Or App 911, 677 P2d 704, *rev allowed* 297 Or 124 (1984). A discharge for reporting a violation of that policy to the proper authority would thus be a discharge for fulfilling a societal obligation and would be actionable.

---

[4] Plaintiff points specifically to ORS 441.605(4), which limits the transfer of patients and requires reasonable advance notice of a transfer, ORS 441.605(7), which provides for freedom from mental or physical abuse, and ORS 441.605(9), which requires that patients be treated with respect and dignity.

■ Having found that plaintiff has a potential wrongful discharge claim, we turn to the question whether she must prove that Lissitz's actions in fact constituted "patient abuse" in the broad sense of the term, or must only show that she in good faith believed that they did.[5] We are required to choose between competing social values: Either plaintiff must act at her peril in making a complaint, risking her job if the complaint later turns out to be unfounded, or the employer must act at its peril in firing her, risking damages if she turns out to have acted in good faith. On balance, we believe that the social harm from reporting in good faith a complaint that may turn out, after investigation, to be unfounded is potentially far less than the harm of not reporting a well-founded complaint for fear of the consequences. The social benefit from investigating all potentially significant violations of a patient's statutory rights is far greater than the social benefit, if any, from allowing an employer to terminate an employe who in good faith reports to the appropriate authorities situations which prove not to be violations. We therefore hold that an employe is protected from discharge for good faith reporting of what the employe believes to be patient mistreatment to an appropriate authority.

This conclusion is consistent with established Oregon law. Statutes which protect employes against retaliation do not require that the alleged violation which the employe claims be ultimately proved. *See, e.g.,* ORS 652.355 (protects an employe who merely consults an attorney or agency about a wage claim); ORS 654.062(5) (protects any employe who makes a complaint under the Oregon Safe Employment Act); ORS 659.030(1)(f) (prohibits discrimination against an employe who filed a civil rights complaint);

---

[5] Plaintiff did not actually report this situation to the Health Division until after her termination. She did not have an opportunity to do so before Lissitz fired her, and we do not think that the sequence of events affects her rights. There is no reason that an employe's protection should depend on whether the employer acts before or after the employe is able to file a complaint. In addition, by complaining to Lissitz, plaintiff was bringing the situation to the attention of the proper authority within the nursing home and thus may have already been engaging in protected activity. *See* ORS 441.057(4) (employe protection under 1981 statute begins with the report of an alleged statutory violation to the administration of the facility); *see also Baker v. United States Dept. of Interior Bd.,* 595 F2d 746 (DC Cir 1978); *Munsey v. Federal Mine Safety & Health Review Com'n,* 595 F2d 735 (DC Cir 1978) (under mine safety law protecting employes who report possible violations to federal agencies, a complaint to the employer is sufficient to provide employe protection).

ORS 663.120(3) (prohibits discharging or discriminating against an employe for filing an unfair labor practices complaint). We have, in fact, upheld awards for retaliation despite holding that the original complaint did not show discrimination. *See City of Portland v. Bureau of Labor and Ind.*, 61 Or App 182, 656 P2d 353, *modified on rehearing*, 64 Or App 341, 668 P2d 433, *rev allowed* 295 Or 840 (1983); *Lewis and Clark College v. Bureau of Labor*, 43 Or App 245, 602 P2d 1161, *rev den* 288 Or 667 (1980). Similar considerations of public policy lead to our conclusion that an employe who reports a violation of a nursing home patient's statutory rights in good faith should be protected from discharge for that action.[6] The court erred in instructing that plaintiff had to prove that "there was, in fact, patient abuse" before she could recover.

Reversed and remanded.

---

[6] The legislature has decided the precise issue in this case for future terminations. In 1981, it adopted ORS 659.035(1), which makes it an unlawful employment practice for an employer to "discharge, demote, suspend or in any manner discriminate or retaliate against an employe" in the terms and conditions of the employe's employment "for the reason that the employe has *in good faith reported possible violations* of ORS ch 441 or of ORS 443.400 to 443.455." (Emphasis supplied.)