Argued and submitted December 14, 1988, reversed and remanded July 19,
reconsideration denied September 8, petition for review denied November 30, 1989
(308 Or 593)

## McCOOL,
*Appellant,*

*v.*

## HILLHAVEN CORPORATION et al,
*Respondents.*

## (A8610-06577; CA A48072)
777 P2d 1013

James J. Roberson, Lake Oswego, argued the cause for appellant. On the brief was Dennis H. Henninger, Lake Oswego.

Corbett Gordon, Portland, argued the cause for respondents. With her on the brief were Jonathan T. Harnish and Bullard, Korshoj, Smith & Jernstedt, P.C., Portland.

WARREN, J.

Graber, P. J., concurring in part; dissenting in part.

## WARREN, J.

Plaintiff appeals the dismissal of her common law claims for wrongful discharge and "outrageous conduct." The trial court held that her amended complaint fails to state ultimate facts sufficient to constitute a claim.

In her wrongful discharge claim, plaintiff alleges, as relevant, that she is a licensed occupational therapist employed by defendant Park Royal Convalescent Center (Park Royal); that Park Royal is subject to OAR chapter 333; that from July 7 to July 15, 1986, defendant's administrator, Duffy, undertook changes in the treatment of patients under plaintiff's supervision that were "outside the rules and guidelines initiated by plaintiff, in contravention of such rules, and in violation of established policies and procedures of Park Royal Convalescent Center requiring such policies [sic] changes to be in writing and of the laws and state regulations and guidelines relative to convalescent patients"; that on July 14, 1986, plaintiff tendered her resignation to Duffy, "setting forth the fact that the program amendments initiated by defendant Duffy, without approval of plaintiff, violated the written contract between plaintiff and Park Royal Convalescent Center relative to her area of responsibility, the laws of Oregon with respect to convalescent patients and the standards of practice of the American Occupational Therapy Association, thereby jeopardized the patients, the convalescent center and plaintiff's professional standing"; that on or about July 9, 1986, plaintiff had registered for a seminar to be conducted in Bend on July 16 and 17; that on July 14, the date when plaintiff gave notice of resignation, Duffy approved plaintiff's attendance at the conference, knowing that the conference had been cancelled; and that plaintiff was not aware that the conference had been cancelled.

Plaintiff further alleged that she was ill on July 16; that on July 17, she travelled to Bend to attend the conference, at which time she learned that it had been cancelled; that on July 17, Duffy notified plaintiff that she was fired, effective July 15, on the ground that she had "engaged in the commission of felony or theft, in connection with work in a fraudulent scheme to obtain salary from the defendant corporation by enrolling in classes which had been cancelled"; that the real reason for the discharge was retaliation for plaintiff's

insistence that the laws of Oregon be complied with; that, in the course of firing plaintiff, defendant falsely represented to others that plaintiff was dishonest, untrustworthy, a thief and incompetent, knowing that plaintiff would, as a result, be unable to work in her professional field thereafter; that, as a result, plaintiff has suffered extreme emotional pain in the form of fear, anxiety, anger, humiliation, embarrassment, depression and confusion; and that she has incurred wage loss in the sum of $4,788.

Plaintiff's claim of "outrageous conduct" incorporates all of the allegations of the wrongful discharge claim and also alleges that, by permitting plaintiff to travel to Bend to attend a conference that it knew had been cancelled and thereafter terminating plaintiff for her attendance and characterizing her conduct as theft or dishonesty, defendants intended to and did damage her in her profession and intended to and did inflict upon her extreme emotional distress.

**1.**     Defendants argued to the trial court that the common law wrongful discharge claim should be dismissed, because plaintiff's exclusive remedy is under ORS 659.035.[1] Plaintiff did not pursue her remedies under ORS 659.035(2), but she contends that the statutory remedies are not exclusive and that she has a common law claim for wrongful discharge. The trial court dismissed the claim without stating its reasons. We reject defendants' contention that the statutory remedy is exclusive.

Plaintiff contends that she was discharged in retaliation for fulfilling the societal obligation of reporting violations of state law. In *McQuary v. Bel Air Convalescent Home, Inc.*,

---

[1] ORS 659.035 provides:

"(1) It is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employe with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employe has in good faith reported possible violations of ORS chapter 441 or of ORS 443.400 to 443.455 or has testified in good faith at an unemployment compensation hearing or other hearing conducted pursuant to ORS chapter 657.

"(2) Complaints may be filed by employes, and this section shall be enforced by the Commissioner of the Bureau of Labor and Industries in the same manner as provided in ORS 659.040 to 659.110 and 659.121 for the enforcement of an unlawful employment practice. Violation of subsection (1) of this section subjects the violator to the same civil and criminal remedies and penalties as provided in ORS 659.010 to 659.110 and 659.121."

69 Or App 107, 684 P2d 21, *rev den* 298 Or 37 (1984), we held that an employe who was discharged for threatening to report alleged nursing home care patient mistreatment to an appropriate state agency had a common law action for wrongful discharge. We noted at that time, however, that

"[t]he legislature has decided the precise issue in this case for future terminations. In 1981, it adopted ORS 659.035(1), which makes it an unlawful employment practice for an employer to 'discharge, demote, suspend or in any manner discriminate or retaliate against an employe' in the terms and conditions of the employe's employment 'for the reason that the employe has *in good faith reported possible violations* of ORS chapter 441 or of ORS 443.400 to 443.455.' " 69 Or App at 112. (Emphasis in original.)

Defendant contends that the statutory remedy is now adequate and exclusive. *See Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977). There is no indication that, when it enacted ORS 659.035(1), the legislature was aware of or intended to abrogate any common law right of action that an employe might have against an employer for a retaliatory discharge. We will not read such a limitation into the statute without its containing a clear statement to that effect. We also conclude that the statutory remedy is inadequate. As the Supreme Court stated in *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 689 P2d 1292 (1984):

"As to the issue of adequacy of state * * * remedies, ORS 659.121 * * * fail[s] to capture the personal nature of the injury done to a wrongfully discharged employe as an individual and the remedies provided by the statutes fail to appreciate the relevant dimensions of the problem. Reinstatement, back pay, and injunctions vindicate the rights of the victimized group without compensating the plaintiff for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care. Legal as well as equitable remedies are needed to make the plaintiff whole." 298 Or at 97.

The same rationale applies here. The trial court erred in dismissing plaintiff's claim for wrongful discharge on the ground that the statutory remedy is exclusive.

**2-4.** The complaint alleges that plaintiff resigned. It does not allege that her resignation was forced or otherwise involuntary. The complaint further alleges that, after plaintiff

resigned, she was discharged. Defendant argues, on appeal for the first time, that the complaint fails to state a claim for wrongful discharge, because it alleges only that plaintiff quit voluntarily and, therefore, was not discharged. Plaintiff contends, also on appeal for the first time, that her resignation was prospective, intended to take place at some future date, and that defendant's notice to her that her job would end immediately was a "discharge." Because the complaint does not allege a prospective resignation and plaintiff failed to replead after dismissal of the claim, we would ordinarily construe the complaint strictly and presume that plaintiff had stated her case in the strongest possible terms and that the resignation was to take effect immediately. *See Pickett v. Washington County,* 31 Or App 1263, 572 P2d 1070 (1977). Because the argument in support of dismissal is raised for the first time on appeal, we construe the complaint liberally in favor of plaintiff. *Campbell v. Ford Industries,* 274 Or 243, 546 P2d 141 (1976). Even under the most liberal construction, however, the complaint does not plead a discharge. We could sustain the dismissal on that theory, but plaintiff has had no opportunity to argue or to replead in response to it; therefore, we remand the case to allow the trial court, in its discretion, to give plaintiff the opportunity to replead. *Prevosky v. Fireman's Fund Ins. Co.,* 262 Or 435, 440, 499 P2d 339 (1972).[2]

5.    Plaintiff's claim of "outrageous conduct" is actually a claim for intentional infliction of severe emotional distress. *Patton v. J. C. Penny Co.,* 301 Or 117, 719 P2d 854 (1986). To state a claim, a plaintiff must allege facts under which it could be shown that the defendant's conduct was "some extraordinary transgression of the bounds of socially tolerable conduct." *Hall v. May Dept. Stores,* 292 Or 131, 135, 637 P2d 126

---

[2] We note, additionally, that, although the issue has not been argued, there is another defect in the pleadings. In *McQuary v. Bel Air Convalescent Home, Inc., supra,* we reasoned that the reporting of violations of a patient's rights is a societal obligation of a person who knows of such violations, *see, e.g.,* ORS 441.460, and held that a discharge for making a report of patient abuse would therefore be actionable at common law. 69 Or App at 110. Here, the complaint does not allege that plaintiff was fired for reporting patient abuse or violations of patients' rights. Rather, it alleges generally that she was fired for complaining about program changes that violated the center's policies and procedures, state laws, regulations and guidelines and the standards of practice of the American Occupational Therapy Association, all to the jeopardy of the patients. No specific violations are alleged. As it presently reads, we would hold that the complaint is not sufficiently definite to state a claim. For the reasons discussed earlier, on remand the trial court shall have the discretion to allow plaintiff to replead.

(1981). We agree with plaintiff that her allegations that defendant sent her to a conference, knowing that it had been cancelled, for the purpose of setting her up to be fired for theft or dishonesty state a claim for intentional infliction of emotional distress.

Reversed and remanded for proceedings not inconsistent with this opinion.

**GRABER, J.,** concurring in part; dissenting in part.

I agree with the majority's disposition of the claim for intentional infliction of severe emotional distress. However, I disagree with its discussion of the tort of wrongful discharge and, as to that claim, dissent.

Even assuming that the majority correctly concludes that the statutory remedy for retaliation is not exclusive, plaintiff fails to state a claim. Although her complaint is not clear, it appears that she failed even to plead that she was discharged, actually or constructively by a forced resignation. That element is so basic to a claim of wrongful discharge that it is inappropriate to permit repleading. Plaintiff admitted by her pleading that she simply quit on July 14, 1986, allegedly because she disapproved of her employer's practices. Later, she alleges, the employer told her, in effect, "You can't quit; you were fired."

In addition, and more fundamentally, I disagree with the majority's analysis of statutory exclusivity. Although it sometimes seems that the exceptions have swallowed the rule, an employer in Oregon may dismiss an employe "at will" in the absence of a contractual, statutory, or constitutional prohibition. *Patton v. J. C. Penney Co.,* 301 Or 117, 120-22, 719 P2d 854 (1986); *Simpson v. Western Graphics,* 293 Or 96, 99, 643 P2d 1276 (1982). *Nees v. Hocks,* 272 Or 210, 536 P2d 512 (1975), the case that first recognized the tort of "wrongful discharge" in Oregon, "rejected the concept that every intentional infliction of harm is prima facie a tort unless justified." *Top Service Body Shop v. Allstate Ins. Co.,* 283 Or 201, 209, 582 P2d 1365 (1978); *see also Swanson v. Van Duyn Choc. Shops,* 282 Or 491, 579 P2d 239 (1978).

The Supreme Court has approved the wrongful discharge theory in only two kinds of situations. First, a claim can be stated when an employer has discharged an employe for

fulfilling a societal obligation. *Nees v. Hocks, supra; Delaney v. Taco Time Int'l.,* 297 Or 10, 16, 681 P2d 114 (1984). Second, a wrongful discharge claim may exist when an employe "is discharged while pursuing a [private] right related to his or her role as an employe and the right is one of important public interest indicated by constitutional and statutory provisions and caselaw." *Holien v. Sears, Roebuck and Co.,* 298 Or 76, 90, 689 P2d 1292 (1984). The majority places the present claim in the first category.

Wrongful discharge is an interstitial tort, however. If other adequate remedies exist, a wrongful discharge claim will not lie. *Walsh v. Consolidated Freightways,* 278 Or 347, 563 P2d 1205 (1977), held that an employe could not state a tort claim when he was fired for reporting a safety violation. The court reasoned that there was an adequate remedy under existing statutes. The Supreme Court has taken pains to preserve that limitation and continues to cite *Walsh* with approval. *Patton v. J. C. Penney, supra,* 301 Or at 121; *Holien v. Sears, Roebuck and Co., supra,* 298 Or at 83-84, 101.

For that reason, the common law cause of action for wrongful discharge based on an allegation of termination in retaliation for the employe's having reported abuse of patients at a convalescent care center, recognized in *McQuary v. Bel Air Convalescent Homes, Inc.,* 69 Or App 107, 684 P2d 21, *rev den* 298 Or 37 (1984), did not survive the 1981 adoption of ORS 659.035(1). That statute makes it an unlawful employment practice for an employer to fire an employe for reporting patient abuse in good faith, and it permits that employe to file a civil action. ORS 659.121(1). McQuary had been terminated in 1980, when she had no access to court to complain of her discharge.

The majority fails to explain why we should depart from the usual assumption that the legislature was aware of the pertinent cases, including *Walsh v. Consolidated Freightways, supra,* when it enacted ORS 650.035(1). In *Holien v. Sears, Roebuck and Co., supra,* the court noted that the statutory remedy in that case was a response to "the inadequacies of the administrative complaint process." 301 Or at 96. The court wrote:

> "It seems elementary that before a legislative body can intend to eliminate certain forms of remedy it must be aware

that such remedies exist.[7] The legislature, in 1977, had no idea that remedies other than those provided through the administrative complaint process were available to employes.

"[7] We are aware of the dicta in *Brown v. Transcon Lines,* 284 Or 597, 611, 588 P2d 1087 (1978), asserting that a legislative intent to abrogate or supersede any previously existing common law remedy may be implied 'even though the legislature might not have been aware of such a remedy.' We reject such a contention in this case."

What may have been true in 1977 was not true in 1981. By then, the Supreme Court had recognized the tort of wrongful discharge in *Nees* and had decided both *Walsh* and *Brown.* The legislative history of ORS 659.035 shows that the legislators who considered Senate Bill 450 were aware of the problem of retaliation against employes who complained about patient care and specifically intended to remedy that problem.

Moreover, ORS 659.035(2) provides:

"Complaints may be filed by employes, and this section shall be enforced by the Commissioner of the Bureau of Labor and Industries in the same manner as provided in ORS 659.040 to 659.110 and 659.121 for the enforcement of an unlawful employment practice. Violation of subsection (1) of this section subjects the violator to the same civil and criminal remedies and penalties as provided in ORS 659.010 to 659.110 and 659.121."

Absent in *Holien v. Sears, Roebuck and Co., supra,* was any similar limiting expression of the ways in which a violation would be remedied.[1]

The majority does not adequately explain why the statutory remedy is inadequate or nonexclusive *with respect to the retaliation claim* (as distinct from the claim of intentional

[1] *Compare Brown v. Transcon Lines, supra,* 284 Or at 611-13. There, the court held that remedies under the 1973 workers' compensation discrimination statute were inadequate, and therefore nonexclusive, because the Commissioner of Labor and Industries was not required to investigate or take action on complaints and because the statute did not provide for a civil action. The court noted that 1977 legislative changes made agency investigation and enforcement mandatory and allowed aggrieved employes the option to sue employers directly. The court suggested, but did not need to decide, that the result might be different under the 1977 law. ORS 659.035(2) contains the same remedies as that 1977 law.

infliction of severe emotional distress). As I read the confusing amended complaint in this case, plaintiff's prayer for general and punitive damages relates to her *extraneous* allegations of defamation. She alleges that, in the course of firing her, defendants told others that she was "dishonest, untrustworthy, a thief, and incompetent." Plaintiff cannot make an otherwise adequate remedy, for a wrongfully *motivated* firing, inadequate by grafting onto it a wholly separate tort or merely evidentiary allegations.

*Holien v. Sears, Roebuck and Co., supra,* does not obliterate the distinction between statutory discrimination, which is not separately actionable as a tort, and a tortious discharge for conduct that is outside the scope of the statutory prohibitions and remedies. The logic of *Walsh v. Consolidated Freightways, supra,* which is still good law, suggests that plaintiff's claim of retaliation cannot support an action for wrongful discharge.[2] I would hold that she has failed to state a claim for wrongful discharge, and I dissent from the majority's contrary holding.

Judges Buttler and Edmonds join in this dissent.

---

[2] As I read the Supreme Court's opinions in the wrongful discharge cases, they establish that all of these elements are necessary to state a claim:

1. The plaintiff was employed by the defendant and was dismissed involuntarily.

2. The plaintiff pursued *either*

    (a) a public, societal obligation recognized in the clear mandate of existing law (statute, regulation, constitutional provision, case) *or*

    (b) a private legal right that is

        (i) related directly to the plaintiff's role as an employe *and*

        (ii) "of important public interest indicated by constitutional and statutory provisions and caselaw."

3. The defendant discharged the plaintiff *because of* the exercise of such a right.

4. The same right is not adequately protected by other existing remedies.

5. The defendant's act caused the plaintiff damage.