Argued and submitted April 23, reversed and remanded June 27,
reconsideration allowed by opinion October 17, 1990
See 104 Or App 100, 798 P2d 1121 (1990)

Sharon S. WOODS,
*Appellant,*

*v.*

FIRST AMERICAN TITLE
INSURANCE COMPANY OF OREGON, INC.,
and Donald Polly,
*Respondents.*

(16-89-01022; CA A61837)

794 P2d 454

James B. Ehrlich, Eugene, argued the cause for appellant. With him on the briefs was Larry O. Gildea, P.C., Eugene.

Gary Y. Sussman, Portland, argued the cause for respondents. With him on the brief were Bruce A. Rubin and Miller, Nash, Wiener, Hager & Carlsen, Portland.

Before Graber, Presiding Judge pro tempore, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Plaintiff appeals from a judgment dismissing her claim for intentional infliction of emotional distress under ORCP 21A(8). Assuming the truth of plaintiff's allegations and giving her the benefit of all inferences that can be reasonably drawn from the facts pled, *Gruner v. Lane County,* 96 Or App 694, 696, 773 P2d 815 (1989), we conclude that her complaint states facts sufficient to constitute a claim. We reverse.

Plaintiff was employed as an office manager by defendant First American Title Insurance Company (American). As a result of a break down in negotiations regarding plaintiff's purchase of a controlling interest in American, defendants[1] allegedly undertook to exact retribution against plaintiff, knowing that she was particularly susceptible to emotional distress because of an illness.[2]

---

[1] Plaintiff alleges that defendant Polly was the acting office manager in plaintiff's absence and acted on behalf of defendant American.

[2] The amended complaint alleges these particulars:

"9.

"On or about October 1, 1988, while still convalescing, plaintiff went to her office to process some paperwork, and discovered that the locks to the office were being changed. Upon inquiry, plaintiff was informed by defendant Polly that the locks were being changed because several packages of coffee were missing from the office kitchen.

"10.

"Plaintiff, accordingly, requested a new key. Defendant Polly advised her that she did not need one and could not have one. When plaintiff inquired of her supervisor regarding this development, the supervisor corroborated defendant Polly's position. Defendants knew that the 'lock change' pretext for denying plaintiff a key was false, and that her termination was imminent.

"11.

"On or about October 11, 1988, while still on temporary leave, plaintiff was informed by her supervisor that she was being terminated, contrary to the prior assurances given her, and notwithstanding that plaintiff had cut the losses of the Eugene office operations substantially since taking over from her predecessor. The reason for termination given to plaintiff by her supervisor was that she had supported an employee in the Eugene office in a dispute with defendant Polly, and that the office could not function with 'two office managers'.

"12.

"On or about October 14, 1988, plaintiff returned to the office to remove her personal belongings. Defendant Polly informed plaintiff that her belongings had already been packed into a box. In fact, most of plaintiff's belongings had not as yet been packed. Polly knew that most of plaintiff's belongings had not been packed.

"13.

"When plaintiff continued to recover her personal possessions from the office,

Defendants argue that their alleged actions, whether viewed independently or as a course of conduct, did not exceed

defendant Polly accused plaintiff, in the presence of third persons, of engaging in theft and threatened to call the police. Said allegation was false. Defendant Polly knew or should have known that plaintiff was not removing anything from the office except her own personal belongings.

"14.

"Defendant Polly reported the alleged theft to Eugene Police Officer Stronach and persuaded said officer to investigate the matter on an informal, unofficial basis. Said officer appeared, unannounced, at plaintiff's home on Saturday evening, October 15, 1988, and threatened to arrest plaintiff based upon the charges made by defendant Polly. Said officer claimed to have a warrant for plaintiff's arrest.

"15.

"Officer Stronach was shown the boxes of personal items which had been removed by plaintiff from defendant's office. However, it was only after speaking to plaintiff's attorney on the telephone that Officer Stronach agreed not to place plaintiff under arrest. In fact, Officer Stronach had no arrest warrant and no official complaint had been made to the Eugene Police regarding plaintiff's alleged theft.

"16.

"When her employment with First American commenced, plaintiff had leased, in her individual capacity, certain computer equipment from Office Equipment Company, which equipment was used exclusively by defendant First American in its business. Defendant First American had always made the lease payments throughout the course of plaintiff's employment. Plaintiff had been advised by her supervisor not to worry about the status of the lease and that defendant First American would be responsible for the payments on said lease.

"17.

"After plaintiff was terminated, defendant Polly, acting within the scope of his employment, advised Office Equipment Company that plaintiff never had the authority to enter into the lease agreement and had committed fraud in doing so, that she was acting on her own behalf in doing so, and that defendant First American disavowed any responsibility for entering into the lease. Said statements were false, and defendant Polly knew said statements were false. Defendant First American has since sold said lease, but plaintiff remains personally obligated on said lease.

"18.

"During the time that plaintiff was employed by defendant First American, she agreed, at defendant First American's request, to assume an individual membership at the Eugene Downtown Athletic Club for business purposes because an individual membership was less expensive than a corporate membership. During the course of plaintiff's employment at defendant First American, said defendant always paid the membership dues for plaintiff's individual membership at the Eugene Downtown Athletic Club.

"19.

"After plaintiff's termination, defendant Polly informed the Eugene Downtown Athletic Club that plaintiff was solely responsible for payment of her membership dues, disavowed any responsibility on behalf of defendant First American for said account, and stated that plaintiff had misrepresented the status of her membership. Said statements were false. Defendant Polly instructed the Eugene Downtown Athletic Club to bill plaintiff personally for said dues.

the "bounds of socially tolerable conduct." Plaintiff argues that her allegations, read together, allege a systematic course of conduct arising out of a special relationship with American that was intended to inflict emotional distress at a time when plaintiff was particularly susceptible, due to her illness.

To state a claim of intentional infliction of emotional distress, a plaintiff must allege that

"(1) defendant intended to inflict severe emotional distress on plaintiff, (2) defendant's acts did in fact cause plaintiff to suffer severe emotional distress, and (3) defendant's acts consisted of 'some extraordinary transgression of the bounds of socially tolerable conduct.'" *Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 626, 733 P2d 430 (1987).

In *Hall v. The May Dept. Stores,* 292 Or 131, 637 P2d 126 (1981), the court said:

"[T]he tort does not provide recovery for the kind of temporary annoyance or injured feelings that can result from friction and rudeness among people in day-to-day life even when the intentional conduct causing plaintiff's distress otherwise qualifies for liability. Similarly, insults, harsh or intimidating words, or rude behavior ordinarily do not result in liability for damages even when intended to cause distress." 292 Or at 135.

---

"20.

"During her employment, plaintiff incurred business expenses in the amount of approximately $200.00, which expenses she advanced on behalf of defendant First American. Plaintiff has submitted receipts to First American and made demand for reimbursement.

"21.

"Defendant First American has refused to reimburse plaintiff for said business expenses incurred in the scope of her employment. Said defendant knew that plaintiff was entitled to reimbursement for said expenses.

"22.

"Plaintiff owned a life insurance policy through Bankers Life Insurance Company which named Defendant First American as beneficiary. A third person, Charles Gudger, also owned a life insurance policy through Bankers Life Insurance Company which named defendant First American as beneficiary on said policy. During the course of plaintiff's employment with defendant First American, the premiums on her policy had been advanced by defendant First American.

"23.

"Upon plaintiff's termination, defendant First American deducted the premium payments it had made on said life insurance policy from her paycheck without notice. In addition, defendant First American deducted premiums it had made on Mr. Gudger's policy from plaintiff's final paycheck, without prior notice to plaintiff. The total deduction was $380.10."

We analyze the conduct element by focusing on the means used to inflict the emotional distress. *See Franklin v. PCC,* 100 Or App 465, 471, 787 P2d 489 (1990). We need not address plaintiff's arguments that employment creates a special relationship that lowers the requisite level of intent or that defendants' awareness of her illness bears on the offensiveness of the conduct, because she pled facts that, if true, are sufficient to show that defendants specifically intended to cause her severe emotional distress and that defendants' conduct exceeded the bounds of socially tolerable conduct. Falsely accusing someone of being a liar, a thief and a fraud before a third person, knowing that the accusations are not true, and persuading a police officer to harass the accused person on the basis of those assertions, constitute more than every-day rude behavior. *See Hall v. The May Dept. Stores, supra,* 292 Or at 141; *McCool v. Hillhaven Corporation,* 97 Or App 536, 777 P2d 1013, *rev den* 308 Or 593 (1989). The trial court erred in holding that plaintiff's complaint did not allege facts sufficient to state a claim for intentional infliction of emotional distress.

Reversed and remanded.