Argued and submitted April 8, 2002, reversed and remanded in part; otherwise affirmed January 8, 2003

## Cathleen DUNWOODY,
*Appellant,*

*v.*

## HANDSKILL CORPORATION,
an Oregon corporation,
and Edward Snider,
*Respondents.*

## 9908-08919; A112093

60 P3d 1135

Maureen Leonard argued the cause for appellant. With her on the briefs was Peggy S. Foraker.

Paul C. Buchanan argued the cause for respondents. With him on the brief was Andrew M. Altschul.

Before Haselton, Presiding Judge, and Linder and Wollheim, Judges.

LINDER, J.

## LINDER, J.

Plaintiff, a contractual employee, allegedly was fired for missing work in order to assist the state in the prosecution of her husband's murderers. She brought this action against her employer for common-law wrongful discharge and intentional infliction of emotional distress. The trial court concluded that a contractual employee who may be terminated only for just cause may not bring an action for wrongful discharge. Based on that conclusion, the trial court dismissed plaintiff's claim for wrongful discharge.[1] We disagree with the trial court's legal conclusion and hold that a person may bring an action for common-law wrongful discharge even though that person is a party to an employment contract that provides that she may be terminated only for cause. We also hold that a person has a public duty to testify in criminal proceedings when compelled to do so by subpoena. Consistently with those holdings, we reverse that part of the trial court's judgment that dismissed plaintiff's claim for wrongful discharge and remand for further proceedings.

Because this case was decided on a motion to dismiss, we take the facts from the complaint. *Dymock v. Norwest Safety Protective Equipment*, 334 Or 55, 57, 45 P3d 114 (2002). In doing so, we assume the truth of all well-pleaded factual allegations and give plaintiff the benefit of all favorable inferences that may be drawn from the facts alleged. *McGanty v. Staudenraus*, 321 Or 532, 536, 901 P2d 841 (1995).

On October 2, 1996, plaintiff's husband was murdered by three teenagers on Larch Mountain. At that time, plaintiff was working for defendant Handskill. In December 1996, plaintiff and defendant entered into a three-year "Contract for Services." Defendant's stated purpose for entering into the contract was "to protect [plaintiff] in the event the Corporation was sold in the midst of the criminal prosecutions, so as to allow her to cooperate in the criminal case

---

[1] The trial court also dismissed plaintiff's claim for intentional infliction of emotional distress. We affirm that dismissal without discussion. Plaintiff also asserted a claim for breach of contract, which she voluntarily dismissed after the trial court dismissed her tort claims. That contract claim is not before us.

without losing her job." To that end, the contract provided for "time off without pay * * * for court time during 1997 and 1998 * * *."

With defendant's approval, plaintiff attended the trial of her husband's murderers. The criminal jury returned a guilty verdict on a Monday evening. Plaintiff "was compelled by the Multnomah County District Attorney's Office to assist and testify in the penalty phase of the criminal prosecution the next day." Although she worked Tuesday morning, plaintiff informed defendant Snider that she would be at the district attorney's office on Tuesday afternoon. While she was meeting with a deputy district attorney regarding her testimony in the penalty phase, defendant Snider called plaintiff on her cellular phone and yelled, " 'Where the hell are you? I need you at the office[,]' " and asked her, " 'What the hell do you do when you are here?' " Defendant subsequently fired plaintiff for missing work in order to assist the state in prosecuting her husband's murderers. According to plaintiff's complaint, defendant's "discharge of plaintiff was in contravention of the clear public policy against interference in a criminal prosecution by attempting to interfere with a witness who has been compelled to assist the District Attorney's Office."

Defendant moved to dismiss plaintiff's claim for wrongful discharge. ORCP 21 A(8). Specifically, defendant argued that, because plaintiff was employed pursuant to a contract and was not an at-will employee, she had an adequate remedy in contract and thus could not bring a claim for wrongful discharge. Additionally, defendant argued that plaintiff failed to identify a "protected public policy interest that was violated by the termination of her employment." The trial court agreed with defendant's first argument and, on that basis, dismissed plaintiff's claim for wrongful discharge.

On appeal, plaintiff argues that her status as a just-cause employee does not preclude her from bringing a claim for common-law wrongful discharge. Defendant takes the opposite position, arguing that, "[b]ecause [plaintiff] had a contract that guaranteed employment for a specific period, her employment could be terminated earlier only for 'good' or

'just' cause." Thus, according to defendant, "in the event of such a discharge, plaintiff, unlike an at-will employee, has a remedy." To bolster that argument, defendant characterizes the tort of wrongful discharge as "a narrow exception to the at-will employment doctrine." As such, it is an interstitial tort that is intended to fill a gap so that an at-will employee, who is otherwise without a remedy, will have one if she is discharged for reasons that contravene public policy. Defendant argues that, because plaintiff may bring an action for breach of contract, she may vindicate her own injury and the public interest by pursuing her rights under the contract.

■ In response, plaintiff points out that contract and tort claims are regularly brought together, especially in employment cases. *See, e.g., McGanty*, 321 Or at 534 (action by former employee seeking damages for intentional infliction of severe emotional distress, wrongful discharge, battery, and breach of contract). Plaintiff also points to cases in which employees brought wrongful discharge claims after pursuing contractual remedies under collective bargaining agreements. *See Shockey v. City of Portland*, 313 Or 414, 837 P2d 505 (1992), *cert den*, 507 US 1017 (1993); *Shuler v. Distribution Trucking Co.*, 164 Or App 615, 994 P2d 167 (1999), *rev den*, 330 Or 375 (2000); *Moustachetti v. State of Oregon*, 122 Or App 598, 858 P2d 487 (1993), *aff'd*, 319 Or 319, 877 P2d 66 (1994). Notwithstanding those examples, neither this court nor the Supreme Court has specifically decided whether a party to an employment contract can pursue a claim for wrongful discharge. A review of Oregon law leads us to conclude that the existence of a contractual relationship does not, by itself, foreclose a plaintiff from bringing a claim for common-law wrongful discharge.

The Supreme Court first recognized the tort of wrongful discharge in *Nees v. Hocks*, 272 Or 210, 536 P2d 512 (1976). In *Nees*, the court began by restating the rule of at-will employment, namely, that "in the absence of a contract or legislation to the contrary, an employer can discharge an employee at any time and for any cause * * *. Such termination * * * is not a breach of contract and ordinarily does not create a tortious cause of action." *Id.* at 216. Notwithstanding that well established rule, the court concluded that "there can be circumstances in which an employer discharges

an employee for such a socially undesirable motive that the employer must respond in damages for any injury done." *Id.* at 218. In so concluding, the court recognized the tort of wrongful discharge as an exception to the at-will rule.

In the two years after *Nees* was decided, the court decided three additional wrongful discharge cases that served to demonstrate some of the boundaries of the newly recognized tort. The first of the three was *Campbell v. Ford Industries, Inc.*, 274 Or 243, 546 P2d 141 (1976). The plaintiff in that case, a stockholder and employee, was fired in retaliation for exercising his statutory right to inspect corporate records. The court determined that the statute's primary purpose was to protect private and proprietary interests rather than public interests. *Id.* at 250. Because the plaintiff had been discharged for exercising a private statutory right that the court concluded was not of great importance to society, the court declined to extend the tort of wrongful discharge to his circumstances. *Id.* at 250-51.

The court likewise concluded that the wrongful discharge claim in *Walsh v. Consolidated Freightways*, 278 Or 347, 563 P2d 1205 (1977), was not actionable. There, an employee claimed that he had been terminated for reporting safety violations. In concluding that the employee could not bring a wrongful discharge claim for such a discharge, the court began by explaining that it created a remedy in *Nees* because "no other remedy existed for the wrongfully discharged employee." *Walsh*, 278 Or at 351. The court recognized that the societal interest in reporting safety violations was on par with the societal interest at issue in *Nees. Id.* But the plaintiff had an adequate remedy, via a complaint to the United States Department of Labor, to vindicate that interest. *Id.* at 351-52. The court thus declined to extend the tort because the available statutory remedies were adequate to address both the injury to society and to the individual plaintiff. *Id.* at 352-53.

One year after *Walsh* was decided, the court reached the opposite conclusion about the adequacy of a plaintiff's remedies and thus about the availability of a wrongful discharge action. In *Brown v. Transcon Lines*, 284 Or 597, 588 P2d 1087 (1978), the plaintiff brought a claim for wrongful

discharge after being terminated for filing a workers' compensation claim. At the time of his discharge, the plaintiff had a remedy under a statute that made it an unlawful employment practice to discriminate against an employee for making a workers' compensation claim. Relying on *Walsh*, the defendant argued that the plaintiff's statutory remedy was adequate and he therefore could not bring a claim for wrongful discharge. The court, however, concluded that the remedy was not adequate because (1) the Commissioner of the Bureau of Labor and Industries had discretion to investigate complaints that an employee was discharged for filing a workers' compensation claim, but was not required to do so; and (2) there was no basis on which an employee could appeal the commissioner's decision not to investigate such complaints. The court expressly distinguished *Walsh* on that basis, observing that in *Walsh* the available statutory remedy was "adequate to protect both the interests of society * * * and the interests of employees," whereas in *Brown* the plaintiff's remedy was both limited and not available as a matter of right. *Brown*, 284 Or at 612-13 (internal quotation marks omitted).

Several years later, in *Delaney v. Taco Time Int'l*, 297 Or 10, 681 P2d 114 (1984), the court synthesized those decisions, concluding that they effectively divided into three categories. The first category encompasses cases, such as *Nees*, in which the plaintiff was discharged "for fulfilling a societal obligation." *Delaney*, 297 Or at 15-16. Such a discharge is actionable as a wrongful discharge. *Id*. The second category encompasses cases in which the plaintiffs were discharged for pursuing private statutory rights, such as *Campbell* and *Brown*. Whether such a discharge gives rise to a wrongful discharge claim depends on whether the private right is also "one of important public interest [as] indicated by constitutional and statutory provisions and caselaw." *Delaney*, 297 Or at 16. The third and final category, typified by *Walsh*, includes cases in which an employee was discharged for reasons that frustrated an important social interest but "an adequate existing remedy protects the interests of society so that there is no need to extend an additional remedy for wrongful discharge." *Delaney*, 297 Or at 16. Applying that analysis, the court concluded that the claim in *Delaney*

fell into the first category because Article I, sections 8 and 10, of the Oregon Constitution create an obligation that members of society not defame each other. *Id.* at 17. There was no suggestion in *Delaney* that any other remedy existed to vindicate the interests, and thus the court concluded that the discharge was wrongful. *Id.*

*Delaney* served to reinforce the understanding that wrongful discharge is an interstitial tort, designed to fill a remedial gap where a discharge in violation of public policy would be left unvindicated. But neither *Delaney* nor the cases that preceded it provide much guidance as to what is required for an available existing remedy to be deemed sufficiently "adequate" that an otherwise wrongful discharge is not actionable, thus falling into *Delaney*'s third category. Some guidance on that point came not long after *Delaney* was decided, however, in *Holien v. Sears, Roebuck and Co.*, 298 Or 76, 82, 689 P2d 1292 (1984).

In *Holien*, the court again addressed the issue of whether a plaintiff can maintain an action for wrongful discharge notwithstanding the availability of a statutory remedy. The defendant argued that there is no common-law action for wrongful discharge when there is a statutory remedy available for employment discrimination. *Id.* The court began its analysis by stating the rule of at-will employment and acknowledging that, if the *Nees* court had not allowed a right of action as a matter of public policy, the plaintiff would have had no remedy. *Holien*, 298 Or at 83. The court concluded that the case fell within the second category of wrongful discharge cases set forth in *Delaney*, *i.e.*, discharge for pursuing an employment-related right that reflects an "important public interest." *Holien*, 298 Or at 90. Because the conduct at issue fell into the second category of cases described in *Delaney*, the plaintiff would be able to recover in tort unless the applicable employment discrimination statutes demonstrated "the legislature's intent not only to provide what it considered to be adequate remedies to an employe[e] such as the plaintiff, but by implication show a legislative intent to abrogate or supersede any common law remedy for damages." *Holien*, 298 Or at 90-91. The court concluded that the pertinent statutes demonstrated no such

intent and that state and federal statutory remedies for sex discrimination were inadequate:

> "As to the issue of adequacy of state and federal remedies, ORS 659.121 and Title VII fail to capture the personal nature of the injury done to a wrongfully discharged employe[e] as an individual and the remedies provided by the statutes fail to appreciate the relevant dimensions of the problem. Reinstatement, back pay, and injunctions vindicate the rights of the victimized group without compensating the plaintiff for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care. Legal as well as equitable remedies are needed to make the plaintiff whole."

*Id.* at 97.

Finally, the court reached the same conclusion in *Shockey*. That case involved a public employee covered by a collective bargaining agreement that protected him from any discharge not based on "just cause." For purposes of its analysis, the court assumed that the employee's discharge was an unjustified discharge that could have been instigated and remedied under the Public Employees Collective Bargaining Act (PECBA) as an unfair labor practice. *Id.* at 419. But the court rejected the defendant's argument that PECBA provided the plaintiff's exclusive remedy, concluding that, "in the terms of the standards identified in *Holien* * * *, here has been no demonstration of *either* the legislature's intent to identify and provide an adequate remedy for all the harm suffered by plaintiff *or* of a legislative intent to supersede this common law remedy." *Id.* at 421 (emphasis in original).

██ Two relevant principles emerge from that review of Oregon law. First, wrongful discharge is an interstitial tort, designed to fill a gap where a discharge in violation of public policy would otherwise not be adequately remedied. Second, the tort performs that gap-filling role in cases in which the discharged employee was employed at will, as in *Nees*, or was protected by statutory provisions or a collective bargaining agreement, as in *Holien* and *Shockey*. In *Nees*, the court created the tort because the plaintiff in that case otherwise would not have had a remedy. *Walsh*, 278 Or at 351. Similarly, in *Shockey* and *Holien*, the court concluded that there

were remedies available to the plaintiffs but that those remedies were not adequate. *Shockey*, 313 Or at 421; *Holien*, 298 Or at 97. Thus, where existing remedies will not fully vindicate the public interest, the tort of wrongful discharge steps in to fill that gap. *Delaney*, 297 Or at 16.[2]

■   Based·on the principles discussed above, we hold that the existence of a contractual relationship, by itself, does not foreclose an employee from bringing a claim for common-law wrongful discharge. Rather, we must inquire whether the remedies provided by contract adequately redress the alleged injury. Thus, in this case, the question becomes whether the remedies to which plaintiff is entitled under her contract adequately "capture the personal nature of the injury done to a wrongfully discharged employe[e]." *Holien*, 298 Or at 97.

■   Plaintiff's contract provided for employment from December 23, 1996 to December 22, 1999. The parties agree that, during that period, she could be terminated only for just cause. *See Swanson v. Van Duyn Choc. Shops*, 282 Or 491, 493, 579 P2d 239 (1978) (just cause requirement may be implicit in individual employment contract). For the first two years, she earned $10.25 per hour based on a five-day, 40-hour work week. For the final year, she was to earn $10.50 per hour. In a breach of contract claim, recoverable damages would include any wages accrued at the time of trial as well as the present value of any lost wages for the remainder of the employment contract. That sum would then be offset by

---

[2] *Embry v. Pac. Stationery and Printing Co.*, 62 Or App 113, 659 P2d 436 (1983), on which the trial court relied, is not to the contrary. In *Embry*, the issue was "whether an employe[e] may sue in tort when he is covered by a collective bargaining agreement that includes a grievance procedure and he has not exhausted that remedy." 62 Or App at 115. We concluded that he could not, basing that conclusion on what we perceived to be a "strong federal policy to encourage and support collective bargaining agreements and their grievance procedures." *Id*. at 116. No similar policy requires first exhausting a common-law breach of contract action. Thus, to the extent that the trial court relied on *Embry* for the proposition that a contractual employee may not bring a claim for wrongful discharge, that reliance was in error. In addition, we have since limited our holding in *Embry*. In *Coulter v. Construction and General Laborers Union*, 107 Or App 522, 526-27, 812 P2d 850 (1991), we stated that, in light of several intervening United States Supreme Court decisions, "any suggestion in [*Embry*] that a wrongful discharge claim is automatically preempted by section 301 [of the Labor Management Relations Act, 29 USC § 185(a)] is not correct."

any amount earned in other employment or any amount that could have been earned in other employment by the exercise of reasonable effort. *Bramhall v. ICN Medical Laboratories, Inc.*, 284 Or 279, 286-87, 586 P2d 1113 (1978).

■■ In contrast, in a tort action for wrongful discharge, a plaintiff is entitled to the full range of economic damages, as well as damages "for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care." *Holien*, 298 Or at 97. Contractual remedies, limited as they are to a plaintiff's lost expectancy set off by reasonable mitigation, clearly do not "capture the personal nature of the injury done to a wrongfully discharged employe[e]" such as plaintiff. *Id.* at 98. Given the limited nature of her contract and the substantial divergence between what she is entitled to recover under the two different theories, plaintiff's contract remedies are not adequate. Thus, if plaintiff has properly pleaded a claim for wrongful discharge, she may pursue that claim notwithstanding her status as a contractual employee.

Having determined that plaintiff may bring a claim for wrongful discharge, we turn to the question of whether she adequately pleaded such a claim under the public duty theory of wrongful discharge. *See Nees*, 272 Or at 218-19 (explaining public duty theory). Read in the light most favorable to plaintiff, her amended complaint alleges the following: After her husband's murderers were convicted on a Monday evening, plaintiff *"was compelled by* the Multnomah County District Attorney's office to assist and testify in the penalty phase of the criminal prosecution the next day. She informed defendant Snider that she would be at the District Attorney's Office /in the afternoon. She worked Tuesday morning." (Emphasis added.) During the meeting on Tuesday afternoon, defendant called plaintiff on her cellular phone, knowing that she was in that meeting, and yelled at her and made various accusations against her. Plaintiff was discharged from her job by defendant for missing work in order to assist the state in prosecuting her husband's murderers. Defendant's discharge of plaintiff "was in contravention of the clear public policy against interference in a criminal prosecution by attempting to interfere with *a witness who*

*has been compelled* to assist the District Attorney's Office." (Emphasis added.)

■     Taking those allegations in the light most favorable to plaintiff, the complaint alleges that defendant discharged plaintiff for being out of the office at a time when she was subpoenaed to testify in the sentencing phase of the criminal trial of her husband's murderers. Specifically, then, we must determine whether there exists a public duty to testify in criminal proceedings when compelled to do so by subpoena. For the following reasons, we conclude that such a duty does exist, and we further conclude that plaintiff adequately pleaded a claim for wrongful discharge.

■     In determining whether there is a public duty that has been frustrated by defendant's alleged conduct, our task is to find a public policy, not to create one. *Babick v. Oregon Arena Corp.*, 333 Or 401, 409, 40 P3d 1059 (2002). We look for "evidence" of such a duty in constitutional and statutory provisions, as well as in the case law of this and other jurisdictions. *Banaitis v. Mitsubishi Bank, Ltd.*, 129 Or App 371, 377-78, 879 P2d 1288 (1993), *rev dismissed*, 321 Or 511 (1995). Following that methodology, Oregon courts have sustained claims for wrongful discharge in which the plaintiffs were terminated for engaging in a wide range of activities, all held to be important public duties for purposes of the tort of wrongful discharge. *See Delaney*, 297 Or at 17 (public duty not to defame others); *Nees*, 272 Or at 219 (public duty to serve on jury); *Anderson v. Evergreen International Airlines*, 131 Or App 726, 734, 886 P2d 1068 (1994), *rev den*, 320 Or 749 (1995) (public duty to report violation of Federal Aviation Administration regulations); *Dalby v. Sisters of Providence*, 125 Or App 149, 153, 865 P2d 391 (1993) (public duty to report violation of drug inventory regulations); *Hirsovescu v. Shangri-La Corp.*, 113 Or App 145, 148, 831 P2d 73 (1992) (public duty to report patient abuse); *McQuary v. Bel Air Convalescent Home, Inc.*, 69 Or App 107, 110, 684 P2d 21, *rev den*, 298 Or 37 (1984) (same). The question here is whether compliance with a subpoena in a criminal case is such a duty. We readily conclude that it is.

■     Oregon statutes provide a district attorney with the authority to compel citizens to appear at trial and at grand

jury proceedings. ORS 136.565, for example, provides that a "district attorney may issue subpoenas subscribed by the district attorney for not to exceed 10 witnesses within the state in support of an indictment to appear before the court at which it is to be tried." Similarly, ORS 136.563 provides district attorneys with authority to subpoena witnesses to testify before a grand jury. *See also State ex rel Upham v. Bonebrake*, 303 Or 361, 365, 736 P2d 1020 (1987) (construing ORS 136.563 and ORS 136.565; concluding that district attorney has power to compel a witness's attendance before grand jury and at trial). If a witness who has been properly subpoenaed fails to appear or refuses to testify, such failure or refusal may be punished as contempt. *State v. Cartwright*, 173 Or App 59, 66 n 9, 20 P3d 223 (2001), *rev allowed*, 333 Or 399 (2002); *see also* ORCP 55 G (failure to appear, be sworn, or answer as a witness pursuant to subpoena punishable as contempt); ORS 44.150 (sheriff, deputy, or appointee is "authorized and required" to break into building in which witness is concealed to serve subpoena); ORS 136.600 (extending provisions of ORCP 55 G and ORS 44.150 to criminal proceedings).

The public policy behind those provisions is clear. Without the authority to compel attendance at grand jury proceedings and at trial, a district attorney's ability to prosecute criminals would be substantially curtailed. Such a curtailment would adversely affect not only the victim in an individual case, but the public generally because the prosecution of such crimes, although solved, could be frustrated and the criminal could go unpunished. *See generally Tuel v. Gladden*, 234 Or 1, 6, 379 P2d 553 (1963) (construing previous version of Article I, section 15, of the Oregon Constitution and noting that "the protection and safety of the people of the state [is] a principle [that] does not have to be expressed in the constitution as it is the reason for criminal law. All jurisdictions recognize its overriding importance.").[3]

---

[3] We emphasize the public policies surrounding compliance with a prosecutor's subpoena because that is what this case, as pleaded, involves. Our opinion should not be understood to suggest that compliance with a defense subpoena, which reflects constitutional fair trial and compulsory process values, would be of any less public importance.

The same policies are frequently and forcefully reflected in judicial pronouncements as well. For example, the United States Supreme Court has noted that it is "beyond controversy that one of the duties which the citizen owes to his government is to support the administration of justice by attending its courts and giving his testimony whenever he is properly summoned." *Blackmer v. United States*, 284 US 421, 438, 52 S Ct 252, 76 L Ed 375 (1932); *see also Blair v. United States*, 250 US 273, 281, 39 S Ct 468, 63 L Ed 979 (1919) (same). Oregon jurisprudence has long acknowledged the same citizen duty. In *Daly v. Multnomah County*, 14 Or 20, 21, 12 P 11 (1886), the court noted that the obligation to appear at trial pursuant to subpoena is "of the class of general services which every man is bound to render for his own and the general good." The state's ability to effectively administer the criminal law depends on many factors. Included among them is the prosecutor's authority, backed by the court's contempt power, to compel a witness or crime victim to testify at trial. Those statutes, rules, and cases demonstrate a clear public duty to appear for trial when properly summoned.

We therefore hold that compliance with a subpoena in a criminal case is an important public duty.[4] An employee discharged for performance of that duty therefore can bring an action for wrongful discharge if no other remedy exists to protect the interests of society and the interests of the employee in the performance of that duty. Here, plaintiff adequately pleaded that she was discharged for complying with a subpoena in a criminal case. Although plaintiff was employed pursuant to a contract, her contract damages are not adequate to remedy the personal injuries she suffered due to her alleged wrongful discharge. As a result, a tort action for wrongful discharge is available to her, and the trial court erred in dismissing that claim.

Judgment dismissing claim for wrongful discharge reversed and remanded; otherwise affirmed.

---

[4] Because plaintiff's complaint does not present the question, we do not consider whether voluntary cooperation as a witness—*i.e.*, neither pursuant to a subpoena nor a threat of subpoena—is also an important public duty.