Roland CANTLEY, Plaintiff,

v.

DSMF, INC., Defendant.

No. CIV. 05–1766–ST.

United States District Court, D. Oregon.

March 20, 2006.

Eric J. Fjelstad, Smith & Fjelstad, Gresham, OR, for Plaintiff.

Gary V. Abbott, Ted Sumner, Abbot & Prange, P.C., Portland, OR, for Defendant.

## ORDER

KING, District Judge.

The Honorable Janice Stewart, United States Magistrate Judge, filed Findings and Recommendation on February 2, 2006. Defendant filed timely objections to the Findings and Recommendation. When either party objects to any portion of a magistrate's Findings and Recommendation, the district court must make a *de novo* determination of that portion of the magistrate's report. 28 U.S.C. § 636(b)(1); *McDonnell Douglas Corp. v. Commodore Business Machines, Inc.*, 656 F.2d 1309, 1313 (9th Cir.1981), *cert. denied*, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). The matter is before this court pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed.R.Civ.P. 72(b).

This court has, therefore, given *de novo* review of the rulings of Magistrate Judge Stewart. This court ADOPTS the Findings and Recommendation of Magistrate Judge Stewart dated February 2, 2006 in its entirety.

IT IS HEREBY ORDERED that DSMF, Inc.'s Motion to Dismiss (# 5) and Cantley's request for sanctions, raised in Cantley's Response to the Motion to Dismiss (# 10) are denied.

## FINDINGS AND RECOMMENDATION

STEWART, United States Magistrate Judge.

### *INTRODUCTION*

Plaintiff, Roland Cantley ("Cantley"), alleges that his former employer, defendant, DSMF, Inc., terminated his employment after he complained to the Oregon Occupational Health and Safety Administration ("OSHA") about unsanitary and unhealthy working conditions. As a result, Cantley brings a claim for discrimination in violation of ORS 654.062(5)(a) (First Claim) and a claim for common law wrongful discharge (Second Claim).

DSMF, Inc. has filed a motion to dismiss the First Claim for failure to file within the applicable statute of limitations and the Second Claim for failure to state a claim (docket # 5). Cantley also included a "motion for sanctions" in his Response to the Motion to Dismiss (docket # 10). For the reasons set forth below, both motions should be DENIED.

### *DISCUSSION*

I. *Failure to File Discrimination Claim Within the Applicable Statute of Limitations*

A. *Facts*

After being terminated, Cantley filed a complaint on March 31, 2005, with the Oregon Bureau of Labor and Industries ("BOLI") against his employer, Crew Shuttle Services, Inc., located at 220 E. Lewis St. (P.O. Box 460), Pocatello, Idaho. Declaration of Eric J. Fjelstad ("Fjelstad Decl."), Ex. B. That BOLI claim also named David Sandquist, CEO, as the contact person for the employer. BOLI issued Cantley a letter on July 18, 2005, notifying him that he had a right to file suit in a state circuit court within 90 days, or by October 16, 2005. *Id*, Ex. D.

Unbeknownst to both Cantley and BOLI, Crew Shuttle Services, Inc. changed its name to DSMF, Inc., effective May 5, 2005, which was over a month after Cantley filed his BOLI complaint. Declaration of Eric J. Fjelstad in Support of Plaintiff's Motion to [Strike] and to Supplement ("Fjelstad Supp. Decl."), Ex. A.

After receiving a right to sue letter from BOLI, Cantley timely filed his initial Complaint in Multnomah County Circuit Court for the State of Oregon on September 30, 2005, against his former employer, Crew

Shuttle Services, Inc., a foreign corporation. However, when double checking the Oregon Secretary of State Business Registry website for the service address, the secretary for Cantley's attorney learned that Crew Shuttle Services, Inc., apparently no longer existed. *Id,* ¶ 2; Affidavit of Gary V. Abbot ("Abbot Aff."), Ex. 2. Nothing in the BOLI file indicated any name or entity change for Crew Shuttle Services, Inc. Fjelstad Decl., ¶ 2. By comparing office addresses, Cantley's attorney determined that the most likely successor to Crew Shuttle Services, Inc. appeared to be a company named CUSA CCS, LLC, doing business as Crew Shuttle Service. *Id.*

Cantley then filed an Amended Complaint on October 21, 2005, naming the defendant as CUSA CSS, LLC, d/b/a/ Crew Shuttle Service (f/k/a/ Crew Shuttle Service), a foreign limited liability corporation. The Amended Complaint was served on October 25, 2005. Both the filing and service of the Amended Complaint occurred after the 90–day limitation period had expired.

After being contacted about representing the defendant on October 28, Gary V. Abbot wrote Cantley's attorney, Eric Fjelstad, on November 2, 2005, stating that he had been retained to represent Crew Shuttle Service and CUSA CSS, LLC, intended to file an appearance, and requested confirmation that the only current defendant was CUSA CSS, LLC. Abbott Aff., ¶ 2 & Ex. 1; Fjelstad Decl., ¶ 2. Mr. Fjelstad responded that after filing the complaint, he had learned that Crew Shuttle Services, Inc. apparently no longer existed and had only served CUSA CSS, LLC, d/b/a/ Crew Shuttle Service "as that was the best information we had according to the state records relating to the actual identity of the defendant." Abbot Aff., Ex. 2.

On November 14, 2005, Mr. Abbot advised Mr. Fjelstad that after terminating Cantley, Crew Shuttle Services, Inc. had entered into an asset sale only with CUSA CSS, LLC. *Id,* ¶ 4. After reviewing the filings with the Oregon Corporation Division and talking with his client, Mr. Abbot called Mr. Fjelstad again on November 15 or 16 and told him that because the purchasing corporation (CUSA CSS, LLC) wanted to use the business name of "Crew Shuttle Service," the selling corporation (Crew Shuttle Service, Inc.) changed its name to DSMF, Inc. *Id.* Accordingly, it appeared to Mr. Abbott that DSMF, Inc. was the proper defendant.

On November 26, 2005, Cantley filed a Second Amended Complaint naming the defendant as DSMF, Inc., a foreign corporation, f/k/a/ Crew Shuttle Service, Inc., as the defendant. Mr. Abbot accepted service of the Second Amended Complaint on November 17, 2005, within 60 days after filing of the original Complaint.

### B. *Analysis*

DSMF, Inc. contends that the First Claim should be dismissed because the Second Amended Complaint naming it as a defendant was filed 31 days after the expiration of the 90–day limitation period. Cantley responds that the Second Amended Complaint was timely filed because service on DSMF, Inc. was effected within 60 days after filing of the original Complaint. Under ORS 12.020(2), a plaintiff has a 60–day window to serve a complaint after filing in order to preserve the filing date as the commencement date:

> If the first publication of summons or other service of summons in an action occurs before the expiration of 60 days after the date on which the complaint in the action was filed, the action against each person of whom the court by such service has acquired jurisdiction shall be deemed to have been commenced upon the date on which the complaint in the action was filed.

Because DSMF, Inc. was served with the Second Amended Complaint within 60 days after filing of the original Complaint, Cantley argues that the filing date of the Second Amended Complaint relates back to the filing date of the original Complaint. Whether the filing of an amended pleading relates back to the date of the original pleading is governed by ORCP 23C, which provides that:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against the party to be brought in by amendment, such party (1) has received such notice of the institution of the action that the party will not be prejudiced in maintaining any defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party brought in by amendment.

Under the first sentence of ORCP 23C, the claims in both pleadings must arise out of the same "conduct, transaction, or occurrence." That is the case here. However, the second sentence of ORCP 23C imposes additional conditions for an "amendment changing the party against whom a claim is asserted." Thus, if the Second Amended Complaint changed the party, then it does not relate back unless the new party (in this case, DSMF, Inc.) (1) received sufficient notice of the filing of the action and (2) knew or should have known that, but for a mistake concerning its identity, it would have been sued initially.

DSMF, Inc. maintains that the Second Amended Complaint changed the party from the Amended Complaint and that it did not receive notice of the filing of the action within the 90 limitations period because DSMF, Inc., and CUSA CSS, LLC, are separate entities which share no common ownership and which reside at different addresses.[1] Declaration of Dave Sandquist, ¶ 1. However, DSMF, Inc. ignores the fact that the original Complaint named Crew Shuttle Services, Inc., as a defendant. Unlike CUSA CSS, LLC, Crew Shuttle Services, Inc. is not only related to, but is the same entity as DSMF, Inc., only with a different name. Thus, the Second Amended Complaint did not substitute or add a new party, but simply corrected the misnaming of the defendant in the original Complaint.

Amended pleadings relate back to earlier pleadings under ORCP 23C "where the plaintiff misnamed but correctly identified the intended defendant and properly served the intended defendant within the statutory period or within the 60 days thereafter." *Krauel v. Dykers Corp.*, 173 Or.App. 336, 340–41, 21 P.3d 1124, 1126 (2001), citing *Mitchell v. The Timbers*, 163 Or.App. 312, 987 P.2d 1236 (1999). Oregon courts recognize that "there can be a circumstance when a party that has been served correctly but not correctly named in the original complaint is brought before the court by the complaint; in such a circumstance, an amendment of the pleading to correct the party's name does not result in a change of par-

---

1. However, the public records reveal that the office address of CUSA CSS, LLC, is the same as the address of DSMF, Inc.'s registered agent (David A. Sandquist), namely 220 E. Lewis, Pocatello, Idaho. *Compare* Fjelstad Supp. Decl., Ex. A (Idaho Application for Registration of CUSA CSS, LLC) *with* Ex. B (Idaho Secretary of State record for DSMF, Inc.).

ties." *Harmon v. Fred Meyer,* 146 Or. App. 295, 299, 933 P.2d 361, 363 (1997).

In *Harmon,* the plaintiff named as a defendant "Interlake, Inc., a Delaware corporation," the former name of an entity that had nothing to do with the litigation. However, within the 60–day grace period, the plaintiff served the complaint on the entity which he intended to sue, namely "The Interlake Companies, Inc." He then filed and served an amended complaint on the proper defendant within the 60–day grace period. To determine whether the amended complaint changed the defendant, the court stated the following test:

> If a plaintiff states a name other than defendant's, but serves the correct entity with a copy of the original complaint, and the correct entity should reasonably have understood from the pleadings that it is the entity intended to be sued, then an amendment of the pleadings to correct the misnomer does not bring in a new entity and is not a change in party. That conclusion is consistent with the requirements stated in ORCP 12 that pleadings be liberally construed and that defects in the pleadings be disregarded if they do not affect the substantial rights of the adverse party.

*Id* at 299–300, 933 P.2d at 364.

The court found this test satisfied because the name on the caption of the original complaint was substantially the same as the defendant's correct name; the allegations correctly described the defendant's business and relationship to the plaintiff; and the summons was served on the proper defendant within the 60–day grace period.

In *Mitchell,* the plaintiff named "THE TIMBERS" as the only defendant, which was an assumed business name registered to Stanley Sanglier. Stanley Sanglier was named on and served with the summons. Much later after discovery, the plaintiff sought leave to file a second amended complaint naming Stanley Sanglier as the proper defendant. Applying the test in *Harmon,* the court concluded that the second amended complaint related back to the original complaint because the plaintiff misnamed the defendant, rather than named the wrong defendant. Sanglier understood from the pleadings that he was the entity to be sued because he was served with summons correctly stating his name; the allegations in the complaint correctly described his business; and the name in the caption was similar to the amended caption. Furthermore, there was no evidence that Sanglier was misled or prejudiced in any way by the misnaming.

The facts in this case are similar to both *Harmon* and *Mitchell* in that the original complaint named an entity that Cantley intended to sue; that entity is related to the proper defendant; the allegations correctly describe the business of the proper defendant and relationship to Cantley; and the proper defendant was served within the 60–day grace period. The only difference here is that, unlike those cases, Cantley did not serve DSMF, Inc., with the original complaint. Instead, the first complaint served on anyone was the Amended Complaint which named CUSA CSS, LLC, as a defendant.

 That difference does not dictate a different result. DSMF, Inc. was served correctly within the 60–day grace period. It simply was not named correctly in the original Complaint. This is not a situation where the first defendant named had nothing to do with the plaintiff or his claim, and the correct defendant was named for the first time in the amended complaint. *See Hamilton v. Moon,* 130 Or.App. 403, 882 P.2d 1134, *rev. denied,* 320 Or. 492, 887 P.2d 793 (1994); *Richlick v. Relco Equip., Inc.,* 120 Or.App. 81, 852 P.2d 240, *rev. denied,* 317 Or. 605, 860 P.2d 819 (1993).

Here the first defendant named is the same as the proper defendant, albeit with a different name, and responded to Cantley's BOLI claim. A plaintiff who files a timely amended complaint is not required to perform "a useless and potentially misleading formality" of serving the original complaint to take advantage of the 60–day grace period. *Kowalski v. Hereford L'Oasis*, 190 Or.App. 236, 243, 79 P.3d 319, 323 (2003), *rev. denied*, 336 Or. 597, 90 P.3d 625 (2004).

Therefore, this court finds that the Second Amended Complaint did not change a party. Because DSMF, Inc. was served within 60 days after filing of the original Complaint, the First Claim was filed within the applicable statute of limitations.

## II. *Failing to State a Claim for Wrongful Discharge*

The Second Claim alleges that Cantley was wrongfully discharged for reporting OSHA violations. DSMF, Inc. seeks dismissal of this common law claim because adequate remedies exist for the same alleged conduct under ORS 654.062(5).[2]

### A. *Legal Standard*

■ The question of whether a terminated employee can bring a wrongful discharge claim is "a gnarly one." *Farrington v. Pepsi–Cola Bottling Co. of Bend*, 2004 WL 817356, *2 (D.Or. Feb.25, 2004). In Oregon, the tort of a wrongful discharge is designed to "serve as a narrow exception to the at-will employment doctrine in certain limited circumstances where the courts have determined that the reasons for the discharge are so contrary to public policy that a remedy is necessary in order to deter such conduct." *Draper v. Astoria Sch. Dist. No. 1C*, 995 F.Supp. 1122, 1127 (D.Or.1998),[3] citing *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 351–52, 563 P.2d 1205, 1208 (1977) and *Sheets v. Knight*, 308 Or. 220, 230–31, 779 P.2d 1000, 1006 (1989), *abrogated on other grounds by McGanty v. Staudenraus*, 321 Or. 532, 901 P.2d 841 (1995). It "never was intended to be a tort of general application but rather an interstitial tort to provide a remedy when the conduct in question was unacceptable and no other remedy was available." *Draper*, 995 F.Supp. at 1128, citing *Walsh*, 278 Or. at 351–53, 563 P.2d at 1208–09.

DSMF, Inc. contends that this case is governed by *Walsh* which dismissed a wrongful discharge claim by an employee who alleged that he had been discharged for reporting safety or health violations. The court noted that the employee had a remedy under 29 USC § 660(c) by filing a complaint with the Department of Labor which investigates the charge and is authorized to file suit in federal court. The court can then order "all appropriate relief including rehiring or reinstatement of the employee to his former position with back pay." *Walsh*, 278 Or. at 352, 563 P.2d at 1208. The court declined to extend the

---

**2.** Although ORS 654.062 was amended by 2005 Or Laws ch. 198, the amended version only applies to conduct that occurred on or after the effective date of the amendment, which was June 9, 2005. All references in this Findings & Recommendation are to ORS 654.062 in effect at the time of the alleged wrongful discharge. ORS 654.062(5)(a) provides in relevant part that it is an illegal employment practice for an employer to:

> bar or discharge from employment or otherwise discriminate against any employee or prospective employee because such em-

ployee has opposed any practice forbidden by [the Oregon Safe Employment Act], [or] made any complaint or instituted or caused to be instituted any proceeding under or related to [the Oregon Safe Employment Act] . . .

**3.** Another issue decided by *Draper* concerning exemption from a damages cap of claims under the whistleblower law was abrogated in *Rabkin v. Oregon Health Sciences Univ.*, 350 F.3d 967, 972 (9th Cir.2003).

additional tort remedy of a wrongful discharge to cover this situation, explaining:

> We feel that existing remedies are adequate to protect both the interests of society in maintaining safe working conditions and the interests of employees who are discharged for complaining about safety and health problems. We also note that ORS 654.062(5) now provides a similar remedy under state law although, admittedly, these provisions were not in effect at the time of the conduct in question. Therefore, we find it unnecessary to extend an additional tort remedy to cover this kind of situation.

*Id,* 278 Or. at 352–53, 563 P.2d at 1208–09 (footnote omitted).

Absent any other Oregon cases on this issue, *Walsh* would appear to dictate dismissal of Cantley's wrongful discharge claim, even though it failed to engage in a thorough analysis of the remedy under ORS 654.062(5). However, as this court previously explained in *Draper, Walsh* established the early framework for the preemption analysis which later cases further developed. Since *Walsh,* the Oregon cases have emphasized the adequacy of the available statutory remedies and have held that an award of merely equitable relief is inadequate to preempt a wrongful discharge claim.

In *Brown v. Transcon Lines,* 284 Or. 597, 588 P.2d 1087 (1978), the Oregon Supreme Court distinguished *Walsh* and emphasized that the plaintiff's statutory remedy must be adequate *and* available as a matter of right before it can preempt a wrongful discharge claim. *Brown* shifted the focus of the inquiry from the *adequacy* of existing remedies to examining whether the Oregon legislature intended to preempt common law remedies when it enacted the statute at issue. *Id,* 284 Or. at 610–11, 588 P.2d at 1093–94. In later years, the Oregon courts seemingly applied either the *Walsh* test or the *Brown* test.

In 1985, however, the focus began to narrow on the concept of the adequacy of the remedy. In *Holien v. Sears, Roebuck & Co.,* 298 Or. 76, 90–91, 689 P.2d 1292, 1300 (1984), the Oregon Supreme Court used the two-step analysis of *Brown,* reasoning that an at-will employee can bring a common law wrongful discharge claim for termination in retaliation for resisting sexual harassment "unless the provisions of ORS chapter 659 demonstrate the legislature's intent *not only* to provide what it considered to be adequate remedies to an employe [sic] such as plaintiff, *but [also]* by implication show a legislative intent to abrogate or supersede any common law remedy for damages." (emphasis added). *Holien* stressed the need to examine whether the available remedies under the pertinent statute adequately address the personal injuries suffered by plaintiffs who lose their jobs due to discriminatory acts, in other words, whether the statutory remedy "appreciate[s] the relevant dimensions of the problem." *Id,* 298 Or at 97, 689 P.2d at 1303; *Farrington,* 2004 WL 817356 at *4. If the statutory remedies failed to recognize and sufficiently compensate plaintiffs for their personal losses in discrimination cases, such failure demonstrated a lack of legislative intent to abrogate or supersede common law remedies. *Holien,* 298 Or. at 90–91, 689 P.2d at 1300. The damages available under ORS 659.121(1) (now ORS 659A.885(1)) and Title VII were held to be inadequate to capture the "personal nature of the injury done to a wrongfully discharged employe[e] as an individual." *Farrington,* 2004 WL 817356 at *4.

Five years later, in *McCool v. Hillhaven Corp.,* 97 Or.App. 536, 777 P.2d 1013, *review denied,* 308 Or. 593, 784 P.2d 1100 (1989), the Oregon Court of Appeals held that the remedies available under ORS

659.121(1) were inadequate to preclude a common law wrongful discharge claim.

In its most recent decision on this issue, *Dunwoody v. Handskill Corp.,* 185 Or. App. 605, 60 P.3d 1135 (2003), the Oregon Court of Appeals allowed a discharged employee to pursue a wrongful discharge claim because the remedies under her employment contract with a "just cause" termination clause were inadequate. The court noted that in contrast to the limited nature of remedies available for breach of contact, a tort action for wrongful discharge allows the full range of economic damages, as well as damages "for such personal injuries as anguish, physical symptoms of stress, a sense of degradation, and the cost of psychiatric care." *Dunwoody,* 185 Or.App. at 613, 60 P.3d at 1140, citing *Holien,* 298 Or. at 97, 689 P.2d at 1303.

■ Until the Oregon Supreme Court clarifies the governing standards, this court will continue to follow its analysis in *Draper* "that a claim for common law wrongful discharge is not available in Oregon if (1) an existing remedy adequately protects the public interest in question, or (2) the legislature has intentionally abrogated the common law remedies by establishing an exclusive remedy (regardless of whether the courts perceive that remedy to be adequate)." *Draper,* 995 F.Supp. at 1130–31.

■ Cantley alleges that he was terminated for calling OSHA into a workplace to address a perceived health risk. If true, he is entitled to the remedy set forth in ORS 654.062(5)(b), which authorizes a court to "order all appropriate relief including rehiring or reinstatement of the employee to his former positions with back pay." If "all appropriate relief" includes all damages recoverable by a wrongful dis-

charge claim, then the statutory remedy is indeed adequate, as held by *Walsh.*

However, Cantley argues that the reference to "all appropriate relief" in ORS ORS 654.062(5) does not include compensatory or punitive damages. A claim brought under ORS 654.062(5) must be processed by the BOLI Commissioner:

under the procedures, policies *and remedies* established by ORS chapter 659A and the policies established by ORS 654.001 to 654.295 and 654.750 to 654.780 in the same way and to the same extent that the complaint would be processed by the commissioner if the complaint involved allegations of unlawful employment practices based upon race, religion, color, national origin, sex or age under ORS 659A.030(1)(f).

(Emphasis added).

Under "ORS chapter 659A," only the equitable remedies of injunction, reinstatement, two years back pay, as well as attorney fees and costs, are available for a violation of ORS 659A.030; no compensatory or punitive damages are recoverable. ORS 659A.885(1).[4] Although ORS 654.062(5) authorizes a court to "order all appropriate relief," the only appropriate relief is that authorized by ORS chapter 659A. Therefore, this statute does not allow recovery of the full panoply of damages available under the tort of wrongful discharge.

DSMF, Inc.'s reliance on *Dooijes v. K & B Transp., Inc.,* 2005 WL 1838962 (D.Or., Aug.2, 2005) is misplaced. The issue in that case was whether the remedies available in the Surface Transportation Assistance Act ("STAA"), 49 USC § 31105, were adequate to foreclose a wrongful discharge claim. Citing *Draper,* Judge Mosman acknowledged that the "Oregon courts have not spoken with one voice

---

4. Although ORS 659A.885 was amended by 2005 Or Laws Ch. 199, the amendment does not apply here because the alleged wrongful conduct took place before June 9, 2005.

regarding the circumstances under which such an inquiry [into the legislative intent to preclude common law remedies] is necessary." *Id.* at *1. He declined to "brave that thicket" because *"Walsh* clearly controls disposition of this case." *Id.* He found that the STAA provides adequate remedies (even if plaintiff were permitted to add a claim for punitive damages) because it provides for "all of the damages plaintiff seeks" by allowing damages for emotional and mental distress, as well as civil penalties adequate to punish violator and deter future wrongful conduct. *Id* at *2. Unlike the situation in *Dooijes, Walsh* is not directly on point here because ORS 654.062(5) does not provide all of the damages plaintiff seeks through the tort of wrongful discharge.

This court concludes that the statutory remedy for violating ORS 654.062(5) is inadequate to protect employees from a wrongful discharge caused by resisting employment discrimination. Additionally, when analyzing Oregon law, the legislature did not intentionally abrogate the common law remedies by establishing an exclusive remedy. Therefore, DSMF, Inc. is not entitled to summary judgment against the Second Claim for wrongful discharge.

### III. *Cantley's Request for Sanctions*

 In his response to DSMF, Inc.'s motion, Cantley includes a "motion for sanctions" for his attorney fees incurred to defend the motion to dismiss the First Claim based on defective service. According to Local Rule 7.1(b), motions "may not be combined with any response, reply or other pleading." Therefore, this motion should be denied for that reason alone. But even had this motion been properly presented, it should be denied because DSMF, Inc's motion to dismiss was not entirely frivolous. Despite the number of Oregon cases dealing with this type of service issue, none is precisely on point, thus requiring some interpretation of Ore-

gon law. Cantley is correct that all of the confusion could have been avoided had DSMF, Inc. timely advised BOLI of its name change. However, this court is aware of no legal obligation to do so.

### *RECOMMENDATION*

DSMF, Inc.'s Motion to Dismiss (docket # 5) and Cantley's request for sanctions, raised in Cantley's Response to the Motion to Dismiss (docket # 10), should be DENIED.

### *SCHEDULING ORDER*

Objections to these Findings and Recommendations, if any, are due on February 21, 2006. If no objections are filed, then the Findings and Recommendations will be referred to a district court judge and go under advisement on that date.

If objections are filed, then a response is due within 10 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendations will be referred to a district court judge and go under advisement.

Feb. 2, 2006.